[Crim. No. 5845. Third Dist. Dec. 29, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
NOVA RICHARD SMITH, Defendant and Appellant.

898

### Counsel

Stuart W. Knight, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Jack R. Winkler and Joel S. Primes, Deputy Attorneys General, for Plaintiff and Respondent.

### Opinion

FRIEDMAN, Acting P. J.—After two mistrials a jury found defendant guilty of second degree robbery. He appeals from the judgment.

On a downtown street in Stockton Mrs. Alice Neil was the victim of a daylight purse-snatching. While the robber was yanking at her purse, Mrs. Neil looked directly into his face. The person was a male Negro wearing a dark jacket and corduroy cap. In court Mrs. Neil identified defendant as her assailant. After the attack Mrs. Neil shouted and chased the robber down the street but lost him. She called the police. Officer Marnoch responded and talked to Mr. Elton Buckley, who saw the suspect run away. The officer followed the direction indicated by Buckley and approached an alley. He saw defendant Smith crouched next to some garbage cans. Defendant jumped up and attempted to run away but the officer caught him. He searched defendant and found $34 in his pocket. Defendant dropped a corduroy cap from his hand. The police brought Mrs. Neil over to the patrol car to view defendant. About 15 minutes had elapsed from the robbery. Mrs. Neil observed him "very carefully" and identified him as the robber. She also identified her purse, which was found nearby with a black jacket lying on top. She identified the black jacket and the corduroy cap as garments worn by the robber. She said that $32 to $34 was missing from her purse.

Mrs. Neil said that she wanted to get a better look at the man and

was invited to view defendant at the police station. There she looked through a one-way mirror and saw Officer Marnoch attempting to get defendant to put on the jacket and cap. Defendant refused. Officer Marnoch testified that defendant was uncooperative at the police station and refused to put on the jacket and cap after being informed that he would be viewed by the victim. Mrs. Neil positively identified defendant in court, saying there was "no doubt" in her mind that he was the robber.

The defense called one Burnis James as a witness. James testified that defendant had been in his, James', apartment on the date of the offense. The witness testified that he himself left the apartment and went to a store. He saw Mrs. Neil walk along the sidewalk. Defense counsel asked James whether or not he, James, had pushed Mrs. Neil and taken her purse. James refused to answer the question on the ground that his answer might incriminate him. James said that he and defendant were good friends. Defendant took the stand and denied committing the offense. He said he had run away from the officer, believing that he was to be arrested on some outstanding traffic warrants.

On rebuttal Mrs. Neil reiterated her identification of defendant and said that it was defendant who had robbed her and that James was not present at the robbery.

■ Defendant charges error in the trial court's rejection of an offer of proof. Michael Barkett, defendant's trial counsel, offered to testify that Burnis James told him that he, James, and not defendant had robbed Mrs. Neil of her purse. The trial court "denied permission" to Mr. Barkett's taking the stand, in effect rejecting the offer of proof.

■ A defendant may show that another person committed the crime and that he himself is innocent. (*People* v. *Erno* (1925) 195 Cal. 272, 279 [232 P. 710]; *People* v. *Edmond* (1962) 200 Cal.App.2d 278, 281 [19 Cal.Rptr. 302].) ■ Here the defense offered the hearsay statement of a third person who had allegedly confessed to the crime for which the accused was on trial. Evidence Code section 1230 codifies an exception to the hearsay rule, permitting evidence of a declarant's statement against his own penal interest if the declarant himself is unavailable as a witness. (See *People* v. *Spriggs* (1964) 60 Cal.2d 868, 870-875 [36 Cal. Rptr. 841, 389 P.2d 377]; Witkin, Cal. Evidence (2d ed. 1966) §§ 531, 536.) One circumstance making the declarant " 'unavailable as a witness' " is an exemption by privilege from testifying concerning the matter. (Evid. Code, § 240.) Burnis James had asserted his constitutional privilege against self-incrimination when asked to identify himself as the purse-snatcher. He was unavailable as a witness in the statutory sense.

■ Nor did Mr. Barkett's status as defendant's trial attorney disqualify him as a witness. Long-standing canons of professional ethics admonish attorneys to refrain from acting as advocates in trials where they possess information of evidentiary value.[1] These canons are not part of the body of California law fixing the qualifications of witnesses. Evidence Code

[1] Rule 1 of the Rules of Professional Conduct of the State Bar of California, approved by the State Supreme Court (52 Cal.2d at p. 893), commends the American Bar Association's Canons of Ethics to California attorneys. Formerly Canon 19 of the American Bar Association declared: "When a lawyer is a witness for his client, except as to merely formal matters, such as the attestation or custody of an instrument and the like, he should leave the trial of the case to other counsel."

In August 1969 the House of Delegates of the American Bar Association adopted a new Code of Professional Responsibility to replace the former canons. The new code became effective January 1, 1970. It includes a new Canon 5, which declares: "A lawyer should exercise independent professional judgment on behalf of a client." Accompanying the new canon are several statements of "ethical considerations," expressed as follows:

"EC 5-9 Occasionally a lawyer is called upon to decide in a particular case whether he will be a witness or an advocate. If a lawyer is both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effective witness. Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively.

"EC 5-10 Problems incident to the lawyer-witness relationship arise at different stages; they relate either to whether a lawyer should accept employment or should withdraw from employment. Regardless of when the problem arises, his decision is to be governed by the same basic considerations. It is not objectionable for a lawyer who is a potential witness to be an advocate if it is unlikely that he will be called as a witness because his testimony would be merely cumulative or if his testimony will relate only to an uncontested issue. In the exceptional situation where it will be manifestly unfair to the client for the lawyer to refuse employment or to withdraw when he will likely be a witness on a contested issue, he may serve as advocate even though he may be a witness. In making such decision, he should determine the personal or financial sacrifice of the client that may result from his refusal of employment or withdrawal therefrom, the materiality of his testimony, and the effectiveness of his representation in view of his personal involvement. In weighing these factors, it should be clear that refusal or withdrawal will impose an unreasonable hardship upon the client before the lawyer accepts or continues the employment. Where the question arises, doubts should be resolved in favor of the lawyer testifying and against his becoming or continuing as an advocate."

Several disciplinary rules (DR-5-101 and DR 5-102) applicable to members of the American Bar Association provide additional explication.

The American College of Trial Lawyers has issued a similar declaration as part of its Code of Trial Conduct: "When a lawyer knows, prior to trial, that he will be a necessary witness, except as to merely formal matters such as identification or custody of a document or the like, neither he nor his firm or associates should conduct the trial. If, during the trial, he discovers that the ends of justice require his testimony, he should, from that point on, if feasible and not prejudicial to his client's case, leave further conduct of the trial to other counsel. If circumstances do not permit withdrawal from the conduct of the trial, the lawyer should not argue the credibility of his own testimony." (43 A.B.A.J. 223, 224-225 (1957).)

section 700 declares that "except as otherwise provided by statute" every person is qualified as a witness. No California statute disqualifies a lawyer from testifying in a trial to which his client is a party. California authorities declare that the inhibition against attorneys' testimony is a problem of professional ethics rather than competence. (*Hotaling* v. *Hotaling* (1922) 187 Cal. 695, 709 [203 P. 745]; *Thompson* v. *Beskeen* (1963) 223 Cal.App.2d 292, 297 [35 Cal.Rptr. 676]; *American Trust Co.* v. *Fitzmaurice* (1955) 131 Cal.App.2d 382, 386 [280 P.2d 545]; Witkin, *op. cit.*, § 777.) A number of California decisions affirm the competence of a trial attorney to testify in a criminal prosecution. (*People* v. *Burwell* (1955) 44 Cal.2d 16, 38 [279 P.2d 744]; *People* v. *Hamberg* (1890) 84 Cal. 468, 473 [24 P. 298]; *People* v. *Stokley* (1968) 266 Cal.App. 2d 930, 936 [72 Cal.Rptr. 513]; *People* v. *Boford* (1953) 117 Cal. App.2d 576, 580 [256 P.2d 334].)

Burnis James was not Mr. Barkett's client; hence any statement he made to Mr. Barkett was not within the attorney-client privilege. (Evid. Code, §§ 951, 954.) Mr. Barkett was a competent witness. His proposed testimony had indubitable relevance. It fell within an exception to the hearsay rule. ■ Nevertheless, under the circumstances, the trial court properly rejected the offer of proof.

We describe the circumstances: As stated earlier, there had been two prior mistrials, both before juries. At his first trial defendant had been represented by Mr. Barkett, a deputy public defender. Burnis James was called as a defense witness and declined to answer certain questions on the ground of self-incrimination. The case was submitted to the jury. After ascertaining from the foreman in open court that the jury was "hopelessly deadlocked," the court declared a mistrial and discharged the jury.

At his second trial defendant was represented by Charles Thompson, a deputy public defender.[2] Before impanelment of the jury, the court asked both to name their prospective witnesses. Mr. Thompson named Burnis James and Michael Barkett, deputy public defender, as his probable witnesses. The jury was impaneled and sworn and several prosecution witnesses were sworn and cross-examined. Toward the end of the day, Mr. Thompson expressed a need to argue an objection to evidence outside the jury's presence. The judge then excused the jurors for the day. At that point defendant Smith requested the court to appoint another lawyer to represent him, stating he didn't feel that he was getting "proper representation." The court denied the request. Mr. Thompson then commenced to argue the evidentiary objection he had raised, but defendant repeatedly

---

[2]On its own motion this court ordered augmentation of the record on appeal to include a reporter's transcript of the second trial. (Cal. Rules of Court, rule 12(a).)

interrupted him. Eventually the attorney asked defendant to keep his "mouth shut" and defendant replied that he would not.

The next morning the court convened outside the jury's presence. Mr. Thompson stated that his client asserted lack of confidence in him and was renewing his request for substitution of counsel. At that point the transcript notes that an unreported "hearing was had as to the above-mentioned matter."[3] The court then convened with the jury present. The judge stated that because of a conflict between "certain parties" the court was declaring a mistrial "in the interest of justice." It then discharged the jurors, ordered that defendant's retrial commence the next morning and "at the specific instance and request of the defendant" appointed Mr. Barkett to represent him at the third trial.

At his third trial defendant was once more represented by Michael Barkett.[4] After the prosecution had rested, Mr. Barkett asked to take up a matter outside the jury's presence. He then made an offer to prove by the testimony of Burnis James that he, James, had committed the crime of which defendant was accused. The judge noted the probability that James would assert his privilege against self-incrimination since he had done so at the first trial. He instructed the attorney to ask James whether he had pushed Mrs. Neil and taken her purse; that, if the witness refused to answer, the attorney was not to question the witness as to additional "details." The judge then called in Mr. James and warned him that he would not grant him immunity from prosecution. Mr. Barkett requested the court to ascertain from defendant whether defendant wished Mr. Barkett, his attorney, to take the stand in case James asserted his privilege of silence. There followed a colloquy which we have reproduced in the margin.[5]

---

[3]The record on appeal would have been more helpful to the reviewing court had the "hearing" been on the record and included in the reporter's transcript.

[4]Before taking testimony the court convened outside the jury's presence. The judge warned defendant against creating any disturbance which would prejudice him in the jury's eyes. The judge also observed: "So, I want the record to reflect this about Mr. Smith's statement that the rulings are not all against him, and I also want to note that on the second trial, the mistrial, I granted the mistrial, I granted his request to dismiss his counsel and I also granted his permission to go ahead and substitute Mr. Mike Barkett. And this was against the Court's suggestion that he ought to have an independent lawyer completely divorced from the Public Defender's office."

[5]"THE COURT: All right, be seated. Mr. Smith, sit down up here in front with the reporter.

"Let the record show that the Court has convened outside the presence of the ladies and gentlemen of the jury. Present are the defendant and his counsel and also present is the Deputy District Attorney, Mr. Jack Fraser.

"Now, as I understand, Mr. Burnis James is going to testify, is that correct?

"MR. BARKETT: We are going to call him to the stand, Your Honor.

Because Mr. Barkett had been named as a prospective witness at the second trial, it is inferable that he had by that time received statements from Burnis James of evidentiary importance to the defense. The record of the third trial eliminates any need of inference. It demonstrates Mr. Barkett's awareness, before the third trial commenced, that his testimony might be important to his client's defense. The record also discloses that at some point preceding the third trial the judge had warned both defendant and Mr. Barkett that the latter could not appear as trial counsel and testify as a defense witness; that the court had offered to appoint a defense attorney not connected with the public defender's office (see fn. 4, *supra*); that

---

"THE COURT: He is going to testify and we don't know what he will testify to.

"MR. BARKETT: That's right.

"THE COURT: All right. Now, I would like to ask you, Mr. Smith, do you want your attorney to testify after Mr. Burnis James testifies?

"MR. BARKETT: If Burnis refuses to answer.

"THE COURT: Yes, if Burnis refuses to answer.

"THE DEFENDANT: I was thinking about it.

"THE COURT: I want an answer so the Court can make a ruling.

"THE DEFENDANT: I am undecided. I don't know.

"THE COURT: When are you going to decide?

"MR. BARKETT: Well, Your Honor, in that event I would offer to prove that in the event that Burnis James take [*sic*] the Fifth Amendment and refuses to answer any incriminating questions, I would then offer to call myself as a witness and my testimony would be to the effect that Burnis James told me that he committed the crime and that Nova Smith, the defendant, did not commit the crime. In addition to telling me many details about how he, James, committed the crime, and I would offer that, although it is hearsay, it is an exception to the hearsay rule because it is a declaration against penal interest and the witness is deemed unavailable if and when he takes the Fifth Amendment.

"MR. FRASER: Your Honor, I think this is discretionary with the Court. Now, these circumstances were placed before Mr. James. This is the third time we have attempted to get this case tried, and Mr. Smith at that time indicated that he definitely wanted Mr. Barkett to represent him and that he didn't want him to testify.

"MR. BARKETT: Well, he indicated he wanted me to represent him.

"MR. FRASER: Yes.

"THE COURT: Yes. I went into the details of that. I said, 'You realize that if he represents you he won't be able to appear on your behalf as a witness.' Now, that is part of the record. So if that is the situation, if he can't make his mind up, and you are going to volunteer to go ahead and testify if Burnis James takes the stand, I am going to deny permission for you to take the stand.

"MR. BARKETT: All right.

"THE COURT: Because this was all gone into originally.

"MR. BARKETT: In the event that does occur, we can consider this proceedings here my offer of proof so this doesn't have to be made in front of the jury.

"THE COURT: Yes, you have already made the offer of proof, you have already made it preceding, outside, and this was exactly the situation that I discussed with Mr. Smith at the outset of these proceedings that I advised him that he would lose the availability of you as a witness, with you representing him. So, therefore, if you do offer to testify in his behalf it is going to be refused. That is all."

defendant Smith, knowing of the court's warning, had personally chosen to have Mr. Barkett continue as his trial attorney.[6]

Imposition of that choice upon the defense did not bar the attorney from testifying. Such a bar would have violated Evidence Code section 700, which effectively classed the attorney as a competent witness. The essential character of the ruling was to force the attorney's withdrawal as advocate if he chose to testify. The court made it plain that an election to continue the attorney's representation was an election not to testify. Both defendant and his attorney shared in that election. When, later in the trial, the attorney offered himself as a witness, he was disavowing the election made before the trial. His client's need, of course, impelled him to disavow the election. The defense, nevertheless, had made its choice. The question, then, is whether the trial court possessed and correctly exercised a power to impose that choice on the defense.

■ Courts have inherent power to control judicial proceedings in order to insure the orderly administration of justice; this principle has been codified by a statutory confirmation of power "to provide for the orderly conduct of proceedings before it, or its officers." (Code Civ. Proc., § 128, subd. 3; Pen. Code, § 1044; *Cooper* v. *Superior Court* (1961) 55 Cal.2d 291, 301 [10 Cal.Rptr. 842, 359 P.2d 274].) The judge's duty is "to see to it that all persons whomsoever, including the defendant himself, indulge in no act or conduct calculated to obstruct the administration of justice." (*People* v. *Merkouris* (1956) 46 Cal.2d 540, 556 [297 P.2d 999], quoting from *People* v. *Harris* (1920) 45 Cal.App. 547, 552-553 [188 P. 65].) The trial judge is obliged to protect a defendant's constitutional right to counsel, but the exercise of that right is, in some measure, subject to control in fulfillment of the judge's duty to erect safeguards against inept procedures which might hamper the proceedings. (*People* v. *Mattson* (1959) 51 Cal.2d 777, 788-792 [336 P.2d 937]; *People* v. *Loving* (1968) 258 Cal.App.2d 84, 87 [65 Cal.Rptr. 425].) *Smith* v. *Superior Court* (1968) 68 Cal.2d 547 [68 Cal.Rptr. 1, 440 P.2d 65], acknowledges the trial judge's inherent power to insure a fair trial, but holds that the power was exceeded when the judge, over the client's objection, attempted to remove a court-appointed attorney whom the judge regarded as incompetent.

■ Here, exercising its inherent power to control the proceedings, the court imposed a pretrial election upon the defense: withdrawal of the attorney if he chose to testify. The propriety of this kind of intervention is judgmental. It varies with the circumstances, entailing a balance between

---

[6]At this point too, a more helpful appeal record would have been created had the pretrial discussions been reported and transcribed. The pretrial discussions, however, are clear enough from the reported, transcribed proceedings held later.

the integrity of the fact-finding process and the client's need for continuity of representation.[7] The potential for debasement of the trial was large. Viewed in prospect, the attorney's proposed testimony was important; it would describe the alleged confession of a third party to the crime of which defendant stood accused. The testimony might at least kindle a reasonable doubt in the mind of a reasoning juror. The attorney would attempt to shift between the sworn objectivity of the witness and the duty-bound partisanship of the advocate. Because of his professional and official role, his sworn testimony would lay silent claim to a heightened degree of credibility. He would thrust upon his opponent a sticky choice between vigorous cross-examination of his professional colleague and abdication of his own professional responsibility. After cross-examination the witness would doff his hat as witness, pick up his hat as advocate and stand before the jury in summation. The synthetic change of hats would hardly interrupt the flow of impressions and influences emanating from him as a unitary human being. In his role as advocate he would assure the jurors of his own veracity as witness. In justice to his client, he could do no less. His opponent would then be driven to attack his credibility as a witness. In justice to *his* client, the opponent too could do no less.

Experienced trial judges are well aware of the powerful and climactic force of the attorneys' summation to the jury. They are aware also of the relatively minute intellectual and emotional reactions which combine or conflict to produce a jury verdict. The more crucial the attorney's testimony, the more serious the disturbance to the nice interplay of decisional influences. Judicial comment particularly emphasizes the interference with the fact-finding process at the point where the attorney argues in support of his own testimony. (*French* v. *Hall* (1886) 119 U.S. 152, 154-155 [30 L.Ed. 375, 376, 7 S.Ct. 170]; *Tomlin* v. *State, supra,* 407 P.2d at p. 1022; *Renault, Inc.* v. *Auto Imports, Ltd.* (1963) 39 Misc.2d 25 [239

---

[7]*Tomlin* v. *State* (1965) 81 Nev. 620 [407 P.2d 1020], illustrates both the trial court's discretionary power over participation by an attorney-witness and the relative hardship entailed by substitution of counsel as a factor in that discretion. There the prosecutor was permitted to continue as trial counsel even though the surprise testimony of a recanting prosecution witness impelled the prosecutor to take the stand as an impeaching witness. After noting that the prosecutor had refrained from arguing his own testimony to the jury, the reviewing court stated: "The better practice would have been for the prosecuting attorney to have stepped out of the case when it became necessary for him to testify. However, this was not reasonable under the unusual circumstances of this case. The practice of acting as prosecutor and witness is not approved and should not be indulged in except under most extraordinary circumstances. However, the surprise testimony of Hayter and the inability of the Deputy District Attorney to locate another prosecutor to take his place left the court with little choice.

"We find that the trial court properly exercised its discretion in allowing the Deputy District Attorney to continue with the prosecution under the unusual circumstances of this particular case." (407 P.2d at p. 1022.)

N.Y.S.2d 807, 809], affd. 19 App.Div.2d 814 [243 N.Y.S.2d 480]; *State* v. *Sullivan* (1962) 60 Wn.2d 214 [373 P.2d 474, 477]; 97 C.J.S. 465-466; 6 Wigmore on Evidence (3d ed.) § 1911, pp. 601-606.)

Situations occur where forced relinquishment of the advocate's role may work undue hardship on the client. ■ "[A] lawyer [should] not testify in litigation in which he is an advocate unless circumstances arise which could not be anticipated and it is necessary to prevent a miscarriage of justice. In those rare cases where the testimony of an attorney is needed to protect his client's interests, it is not only proper but mandatory that it be forthcoming." (*Schwartz* v. *Wenger* (1963) 267 Minn. 40 [124 N.W.2d 489, 492], cited in American Bar Assn., Code of Professional Responsibility, *supra*, p. 22.) ■ Here the circumstances were fully foreseeable. Aside from his client's subjective preference, there was no compelling need for Mr. Barkett to resume the role of attorney in the third trial. Several factors permitted substitution of other counsel with negligible disadvantage to the client's cause. The need for the attorney's testimony was discernible in advance of the trial; there was no emergency; the facts of the case were simple, the attorney's professional involvement transitory,[8] the episode to which he would testify of brief duration.

The prospective characteristics of the trial created an appropriate occasion for the exercise of the trial court's inherent power over the proceedings. The court properly gave defendant and his attorney a pretrial choice between the latter's withdrawal as counsel and his withdrawal as a witness. Having exercised an election validly imposed upon it, the defense was bound by that election. ■ Rejection of the subsequent offer of proof was proper.

■ Defendant contends that his in-court identification by Mrs. Neil was tainted by improper pretrial confrontations. The victim's "on-the-scene" identification of her assailant immediately after the crime was constitutionally permissible. (*People* v. *Rodriguez* (1970) 10 Cal.App.3d 18, 29-30 [88 Cal.Rptr. 789].) The "one-to-one" confrontation at the police station is subject to closer scrutiny. Because suggestive identification is a danger, such a confrontation is usually impermissible. (*People* v. *Martin* (1970) 2 Cal.3d 822, 828-830 [87 Cal.Rptr. 709, 471 P.2d 29].) Although Mrs. Neil was permitted to view defendant at the police station, no danger of suggestion arose, since the police were simply granting her request to see the same individual she had just identified. (See *People* v. *Martin, supra,* 2 Cal.3d at p. 831.)[9]

---

[8]At this point no distinction can or should be drawn between a court-appointed public defender, court-appointed private attorney and a privately retained attorney. (See *Smith* v. *Superior Court, supra,* 68 Cal.2d at pp. 561-562.)

[9]A separate ground for permitting an in-court identification despite an improper

■ Defendant charges violation of his privilege against self-incrimination, because the prosecutor in his opening statement commented that the accused had been uncooperative after his arrest and because Officer Marnoch was permitted to testify that at the police station defendant had refused to don the jacket and cap found at the scene of the crime. Appellant had no constitutional right to refuse to put on clothing for identification purposes; his refusal, like other acts or conduct indicating possible consciousness of guilt, was a proper subject of testimony and comment. (*People v. Ellis* (1966) 65 Cal.2d 529, 533-537 [55 Cal.Rptr. 385, 421 P.2d 393].)

■ Defendant urges that hearsay was improperly admitted when the court allowed Officer Marnoch to testify that Mr. Buckley had told him of seeing the suspect running away from the crime scene in a particular direction. There are two reasons for rejecting the claim. First, defendant's trial counsel specified no ground when objecting to the evidence, hence waived the objection. (Witkin, Cal. Evidence (2d ed. 1966) § 1288.) Secondly, the declaration was not hearsay because it was not offered for its truth, but only to establish the cause for the officer's pursuit. (See, e.g., *People v. Carella* (1961) 191 Cal.App.2d 115, 140 [12 Cal.Rptr. 446]; *People v. Radley* (1945) 68 Cal.App.2d 607, 609 [157 P.2d 426].)

■ Defendant claims former jeopardy, arising from the discharge of the jury at his first trial. Although a waiver may be invoked from failure to raise the former jeopardy defense in the trial court, it appears that defendant's trial attorney was justified in not raising it. ■ Although subjection to successive trials may under many circumstances constitute double jeopardy, the discharge of the jury after the court has found no reasonable probability of jury agreement does not prevent a retrial. (Pen. Code, § 1140; *Paulson v. Superior Court* (1962) 58 Cal.2d 1, 5-6 [22 Cal.Rptr. 649, 372 P.2d 641].) ■ The present claim grasps the fact that, in inquiring into the existence of a jury deadlock, the trial judge consulted only the jury foreman and failed to poll the individual jurors in conformity with the procedure outlined in *Paulson v. Superior Court, supra. Paulson* declares only that the judge should "ordinarily" question the individual jurors as to the reasonable probability of a verdict; it points only to the poll of the individual jurors as the "best method" of ascertaining the exist-

---

pretrial confrontation is the "independent source" rule. In this case defendant's trial counsel failed to challenge Mrs. Neil's identification testimony. Thus the trial court had no occasion to determine the question of admissibility in the manner prescribed by *People v. Caruso* (1968) 68 Cal.2d 183, 189-190 [65 Cal.Rptr. 336, 436 P.2d 336]. (See also, *People v. Martin, supra*, 2 Cal.3d at pp. 832-834.) As a result, there is no trial court finding whether Mrs. Neil's in-court identification was based upon her view of the defendant preceding the confrontation at the police station.

ence of a deadlock. (58 Cal.2d at pp. 7-8.) Here, unlike some of the cases discussed in *Paulson,* there was no informal out-of-court communication between judge and jury foreman. The clerk's minutes[10] disclose a formal communication between the jury and jury foreman in open court, in the presence of the entire jury, defendant and the attorneys. The minutes declare: "At 5:25 P.M., pursuant to request by foreman of jury and by direction of the Court the jury was returned to the Courtroom. Both counsel, the defendant in custody and all Court personnel were present. The Foreman of the jury informed the Court that the jury is hopelessly deadlocked and upon being asked by the Court whether the jury wished to deliberate further, the Foreman replied in the negative, whereupon the Court declared a mistrial and excused the jury." Under the circumstances there was adequate compliance with the requirement that the trial judge probe the rigidity of the deadlock before discharging the jury.

The lack of a former jeopardy claim in the trial court was also justified by the circumstances of the second mistrial. At the second trial relations between defendant and the court-appointed public defender had completely broken down and defendant was emphatically demanding his replacement. Defendant had no right to be represented by a particular public defender. (*People* v. *Stroble* (1951) 36 Cal.2d 615, 629 [226 P.2d 330]; *People* v. *Bonville* (1968) 267 Cal.App.2d 4, 7 [72 Cal.Rptr. 592].) Nevertheless, the mistrial was the court's response to defendant's expressed wish to have Michael Barkett represent him. Defendant effectually consented to the second mistrial, hence may not invoke it as prior jeopardy. (*Paulson* v. *Superior Court, supra,* 58 Cal.2d at p. 5.)

Judgment affirmed.

Regan, J., and Janes, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 24, 1971. Peters, J., and Mosk, J., were of the opinion that the petition should be granted.

---

[10]Defendant failed to document his double jeopardy claim by bringing up the reporter's transcript of the first trial, or at least that portion of it reflecting upon his claim. Under the circumstances, we dispose of the claim upon the record before us.