NATIONAL CHILD CARE, INC., Appellant,

v.

Janet K. DICKINSON and Robert Dickinson, Wife and Husband; and Susan Hill, Appellees.

No. 88–1715.

Supreme Court of Iowa.

Oct. 18, 1989.

Edward Ronwin, Urbandale, for appellant.

Thomas E. Salsbery and Stanley J. Thompson, Des Moines, for appellees.

CARTER, Justice.

This appeal is from an order disqualifying attorney Edward Ronwin from representing the plaintiff, National Child Care, Inc. (National), in an action alleging defendants tortiously interfered with business opportunities of National. Attorney Ronwin is National's sole shareholder.

When it became apparent that Ronwin, in his capacity as chief executive officer of the corporation, conducted transactions which were likely to subject him to the role of a witness at trial, defendants, Janet K. Dickinson and Robert Dickinson, moved to have him disqualified pursuant to Iowa Code of Professional Responsibility DR 5–101(C). The court sustained this motion and granted National forty-five days to secure new counsel or be subject to sanctions, including dismissal. When National failed to secure new counsel within the prescribed time, the Dickinsons filed a motion to dismiss the action. The court granted that motion with the condition that the dismissal be without prejudice.

National contends that, because Ronwin owns all of National's stock, his interests and those of the corporation coincide. From this premise, National argues that the present situation should be equated with that of an individual lawyer-litigant who may appear in court to represent his or her own interests as a party to litigation notwithstanding the fact that the lawyer-litigant may also be a witness.

In *Presnick v. Esposito*, 8 Conn.App. 364, 513 A.2d 165 (1986), the court held that an individual lawyer-litigant was not barred, pursuant to Connecticut's DR 5–101(C) counterpart, from appearing as both attorney and witness in an action he brought for collection of legal fees and in defense of a counterclaim for malpractice in the same action. In refusing to impose disqualification, the court stated:

[T]he reasons underlying the general rule prohibiting an attorney from testifying in his client's case do not apply where the attorney is the client.... One reason is that it is unfair to the client that his case be presented through a witness whom the trier of fact would necessarily view as interested because of the witness' zeal of advocacy and likely interest in the result of the case. A second reason is one of public policy: permitting an attorney who is trying a case also to be a witness in establishing its facts will visit

on the legal profession public distrust and suspicion arising from the attorney's dual role.... The third reason for the rule is [to avoid the appearance of wrongdoing]. *We do not believe that any of these reasons applies where the attorney seeks only to represent himself in his own case.*

*Id.* at 368–69, 513 A.2d at 167 (emphasis added) (citations omitted).

The Connecticut court's conclusion is, we believe, correct regarding the situation of the individual lawyer-litigant. We fail to see why a different result should prevail where a corporation is represented by an attorney who is its sole shareholder. In reaching this conclusion we do not rely on a corporation's right to appear pro se. Some doubt exists as to whether that right exists. *See DeVilliers v. Atlas Corp.*, 360 F.2d 292 (10th Cir.1966); *Acme Poultry Corp. v. United States*, 146 F.2d 738 (4th Cir.1944), *cert. denied*, 324 U.S. 860, 65 S.Ct. 865, 89 L.Ed. 1417 (1945); *Paradise v. Nowlin*, 86 Cal.App.2d 897, 195 P.2d 867 (1948); *Tuttle v. Hi–Land Dairyman's Ass'n*, 10 Utah 2d 195, 350 P.2d 616 (1960); 19 Am.Jur.2d *Corporations* § 2172 (1986); Annotation, 19 A.L.R.3d 1073 (1968). It is suggested, however, in *Knox Leasing v. Turner*, —— N.H. ——, 562 A.2d 168 (1989), that pro se representation of entities, in contrast to individuals, turns on whether the self-representation is by all affected members of the entity.

■ We need not decide at this time whether a corporation may appear pro se in this state. Ronwin is a licensed lawyer. Moreover, National's legal theory is not based on pro se representation as such but rather on an analogy to pro se representation by an individual lawyer-litigant. We find the suggested analogy is instructive and illustrates that the policy reasons underlying DR 5–101(C) simply do not apply to the situation involving Ronwin's representation of National in the present litigation.

In applying disciplinary rules governing the attorney-client relationship, the paramount consideration is the interest of the client. DR 5–101(C) does not directly focus on conflicts of interest between attorney and client, but at preventing potential harm to the client because of a conflict inherent in the attorney's dual role as advocate and witness. *See* ABA Comm. on Ethics and Professional Responsibility, Formal Op. 339 (1975); Sutton, *The Testifying Advocate*, 41 Tex.L.Rev. 477, 481 (1963). A California appellate court has adopted a standard that neither an opposing litigant nor the trial court should be able to deny a client's choice of counsel without a convincing demonstration of detriment to the opponent or injury to the integrity of the judicial process. *Lyle v. Superior Court*, 122 Cal. App.3d 470, 482, 175 Cal.Rptr. 918, 926 (1981). We conclude that neither of these dangers is present in Ronwin's representation of National.

■ The second issue on appeal involves the district court's refusal to disqualify the Dickinsons' attorney, Thomas Salsbery, upon National's motion. That motion was based on DR 5–102(B), which provides:

If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

National alleged that Salsbery was present at some of the meetings between Ronwin and Janet Dickinson, that it intended to call Salsbery at trial, and that his testimony would be prejudicial to the interests of his clients, the Dickinsons. The district court overruled National's motion without prejudice, asserting that the record was insufficient to allow the court to reach a conclusion on the issue.

At the time of the ruling, there was nothing in the record to indicate what Salsbery's testimony might be, other than the allegation by National that it would be, adverse to his client's interests. National thus failed to carry its "burden of demonstrating the likelihood that prejudice will or might result" as a consequence of Salsbery's testimony. *Freeman v. Kulicke & Soffa Indus., Inc.*, 449 F.Supp. 974, 978

(E.D.Pa.1978), *aff'd*, 591 F.2d 1334 (3d Cir. 1979).

A final issue raised by National centers upon the court's dismissal of its action as it relates to defendant Susan Hill. Hill was represented by separate counsel and unlike the Dickinsons did not file a motion to dismiss. National contends the court should not have dismissed its claim as to Hill sua sponte on a ground the other defendants raised but she did not. We need not answer this question. The dismissal as to all defendants was linked to the improper disqualification of attorney Ronwin. Consequently, it cannot be permitted to stand as to any of the defendants.

The judgment of the district court is reversed, and the case is remanded to the district court for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

All Justices concur except McGIVERIN, C.J., and SNELL, HARRIS and NEUMAN, JJ., who dissent.

SNELL, Justice (dissenting).

I respectfully dissent.

No attorney having a just conception of his true and proper position will willingly unite the character of counsel and witness in the same case, for experience has shown that those who, on repeated occasions, allow themselves to be thus used, are certain to feel most keenly the consequences of their indiscretion. Some courts have excluded such testimony entirely, and this of course not because the source of proof is regarded as unreliable, but because public policy and the integrity and welfare of the profession dictate that no one should be at the same time both advocate and witness for his client.

Our court so stated in *Alger v. Merritt*, 16 Iowa 121, 128 (1864). Dealing with the same problem in 1936, our court quoted *Alger* and concluded, "the court has always condemned such practice and deemed it reprehensible." *See Cuvelier v. Town of Dumont*, 221 Iowa 1016, 1021, 266 N.W. 517, 519–20 (1936).

In *In re Estate of Scanlan*, 246 Iowa 52, 64, 67 N.W.2d 5 (1954), the court observed that one of the attorneys testified as a witness, and stated that "although it is not clear that he participated actively in the trial, he should have withdrawn his appearance as attorney."

These statements and our rules of conduct focus on preventing potential harm to the client because of the conflict inherent in the attorney's dual role as advocate and witness. *See People v. Smith*, 13 Cal. App.3d 897, 908–09, 91 Cal.Rptr. 786, 793–94 (1970); ABA Comm. on Ethics and Professional Responsibility, Formal Op., 339 (1975); Ann.Code of Professional Responsibility, 214 (1979); Sutton, *The Testifying Advocate*, 41 Tex.L.Rev. 477, 481 (1963). The reasoning behind DR 5–101(C) is in fact related to the preservation of the attorney's role as an independent proponent of argument as opposed to an interested and partisan witness. Enker, *The Rationale of the Rule that Forbids a Lawyer to be Advocate and Witness in the Same Case*, 1977 Am.B.Found.Res.J. 455, 463–64 (1977).

The majority asserts that there is no difference between a lawyer's appearance on his or her own behalf and the situation presented by this case. This holding ignores the fact that Ronwin and National are not identical. National is a corporate entity and Ronwin is a stockholder. Their interests are not entirely the same. As EC 5–18 of the Code of Professional Responsibility points out:

> A lawyer employed or retained by a corporation ... owes his allegiance to the entity and not to a stockholder, director, officer, employee, representative, or other person connected with the entity. In advising the entity, the lawyer should keep paramount its interests and his professional judgment should not be influenced by the personal desires of any person or organization.

Ronwin's failure to secure counsel for National who will not also serve as a witness may well prejudice National's interests during the trial and is clearly violative of this ethical consideration. The practical effect

of the holding is to elevate Ronwin's financial interests in appearing "pro se" above those of his client in having effective and unimpeachable counsel.

National advances a second argument based on one of the exceptions to DR 5–101(c)(4) which states that an attorney may serve as advocate and testify, "As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case." In a situation almost identical to that presented by this case, a New York court found the substantial hardship exception inapplicable. *Gasoline Expressway, Inc. v. Sun Oil Co.*, 64 A.D.2d 647, 407 N.Y.S.2d 64 (1978). There, a corporation whose attorney was also its sole shareholder brought an action for recision of an agreement between the corporation and the defendants. The attorney, operating in her capacity as executive officer of the corporation, had negotiated and signed the agreement, and was a necessary witness for the corporation. The defendants moved for the attorney's disqualification under DR 5–101(B) of the New York Code of Professional Responsibility, which is identical to DR 5–101(C) of the Iowa Code. The corporation contended that its attorney should be allowed to undertake the dual role of attorney and witness under the substantial hardship exception, apparently because of financial considerations. The appellate court noted that, "conclusory allegations concerning the cost of obtaining other counsel ... are totally insufficient" to support a claim of substantial hardship. *Id.* at 647–48, 407 N.Y.S.2d at 65.

The allegations made by National are similar to those made by the corporate plaintiff in *Gasoline Expressway*. Such allegations are inadequate to show that "substantial hardship" is the inevitable result of Ronwin's disqualification. Moreover, the district court's dismissal of National's action is keyed more to the corporation's adamant refusal to use all means available to it to secure another attorney, than to Ronwin's "distinctive value" to National in this particular suit.

The record reflects the fact that the corporation was put on notice of its attorney's potential ethical problem at an early stage in the proceedings. In fact, National was aware some six months prior to Dickinsons' filing of their motion to dismiss that the court was concerned with the conflict between Ronwin's role as advocate and as witness.

Despite this early knowledge, National made no effort to locate a new attorney. Even after the court disqualified its attorney pursuant to DR 5–101(C), National apparently made no attempt to secure new counsel until after the forty-five day grace period allotted by the court had elapsed. National offers no reasons for its failure to attempt to secure new counsel at an earlier date. Nor does it explain why it is unable to secure a different attorney on a contingent fee basis.

The Iowa Rules of Civil Procedure do not specifically grant the courts of this state the power to dismiss an action over which they have jurisdiction on their own motion, except in situations involving want of prosecution. *Motz v. Motz*, 207 N.W.2d 580, 581 (Iowa 1973); Iowa R.Civ.P. 215.1. This court has held, however, that when a trial court exercises restraint in so doing, it may dismiss an action *sua sponte* in other situations as well. *Rush v. Sioux City*, 240 N.W.2d 431, 439 (Iowa 1976). Whether a trial court's *sua sponte* dismissal of an action is reasonable ultimately depends upon the factual situation.

In this case, it does not appear that the district court's dismissal of National's action against Hill was beyond the contemplation of the parties. *Teleconnect Co. v. Iowa State Commerce Comm'n*, 366 N.W.2d 511 (Iowa 1985). National had been aware for some six months prior to dismissal that failure to locate new counsel might result in that sanction. It unsuccessfully fought the Dickinsons' motion to dismiss, filed when it failed to secure a new attorney. The law suit against Hill is posited on the same allegations made against

the Dickinsons and also depends on the testimony of Ronwin. Given the court's warning that dismissal would be a possible sanction for failure to comply with the court's ruling on disqualification, I believe the court was within its discretionary authority to dismiss National's suit against Hill along with the suit against the Dickinsons.

For these reasons I would affirm the district court.

McGIVERIN, C.J., and HARRIS and NEUMAN, JJ., join this dissent.