[No. D012867. Fourth Dist., Div. One. Mar. 27, 1991.]

THE PEOPLE, Plaintiff, v.
MARK OUTLER TABB, Defendant;
KIRK MIGDAL, Appellant;
THE MUNICIPAL COURT FOR THE SAN DIEGO JUDICIAL
DISTRICT OF SAN DIEGO COUNTY, Respondent.

Counsel

Francis J. Bardsley, Public Defender, and Richard P. Siref, Deputy Public Defender, for Appellant.

Lloyd M. Harmon, Jr., County Counsel, and R. Mark Beesley, Deputy County Counsel, for Respondent.

Opinion

HUFFMAN, Acting P. J.—Kirk Migdal, a deputy public defender who was attorney of record for defendant Mark Outler Tabb in a felony matter, was sanctioned $75 by the municipal court pursuant to Code of Civil Procedure section 177.5[1] when he failed to timely appear at Tabb's scheduled preliminary hearing. In an appeal to the appellate department of the superior court, Migdal challenged the applicability of section 177.5 to any criminal proceeding and alternatively contended that, even if the section applied, he was not in violation of it because he was inadvertently, not willfully, tardy to the hearing, and in any case the order imposing sanctions failed to comply with statutory requirements. The appellate department of the superior court affirmed the order imposing sanctions and certified the matter to this court for settlement of the important question of law of the scope of applicability of section 177.5. We have examined the text and legislative history of the section and conclude it is fully applicable to criminal proceedings. Moreover, the municipal court did not abuse its discretion in imposing the sanction nor was the order inadequate in form. We affirm.

Factual and Procedural Background

The facts giving rise to the award of sanctions are summarized in the parties' engrossed settled statement on appeal which incorporates as part of the appellate record the minute orders and reporter's transcripts of the relevant hearings. (Cal. Rules of Court, rule 64(a)(1).)[2] These documents show the public defender's office was appointed to represent Tabb at his arraignment on June 5, 1989. Bail review was set for June 8 and the

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

[2] All references to rules are to the California Rules of Court unless otherwise specified.

preliminary hearing set for June 16, 1989, at 8:15 a.m. At the June 8, 1989, bail review hearing, attorney Migdal was present on behalf of Tabb; bail review was waived and the preliminary hearing date of June 16 was confirmed with a one- and one-half-hour time estimate.

Before the June 16, 1989 hearing, Migdal notified the deputy district attorney on the case that Tabb would be requesting a continuance; the district attorney's office did not oppose the continuance and had no witnesses present on June 16. On that date, Tabb was present in custody in the presiding department of the municipal court. The court called his case for assignment at approximately 8:30 a.m. and again at approximately 9 a.m., but Migdal was not present because he had mistakenly miscalendared the preliminary hearing date for June 19 rather than June 16. At approximately 9:30 a.m., Migdal showed up and obtained a continuance of the preliminary hearing without opposition. The court set an order to show cause requiring Migdal to appear (without his client) on June 21, 1989. On that date, Migdal explained to the court he had made a mistake in calendaring the hearing, stating:

"I took it from the 16th and put it on the 19th. I had seen my client earlier that week, talked to the D.A. I knew there was going to be a continuance. He had no witnesses here."

The court imposed a $75 sanction payable in one week. In its written order, the court recited Migdal had been ordered to appear in the presiding department on the June 16, 1989, hearing date, had failed to answer calendar call twice, and had failed to notify the clerk of his whereabouts or a reason for his nonappearance. When he arrived, he was advised of the order to show cause why sanctions should not be imposed and the hearing date. At that hearing, he admitted he had failed to properly calendar the matter. Based on this failure to appear in a timely fashion as ordered, the court imposed $75 sanctions pursuant to section 177.5, payable to the clerk of the court within a week of the hearing. The file shows payment was received June 30, 1989.

Migdal sought a writ of certiorari from the appellate department of the superior court, which was denied on the ground the order imposing sanctions was appealable. Migdal filed his notice of appeal of the order, and then sought a writ of mandate or prohibition from this court. We denied his petition in an unpublished order dated August 15, 1989, stating there was an adequate remedy by way of appeal. (Migdal v. Muni. Ct., D010544.) The order went on to explain:

"Code of Civil Procedure section 904 precludes the appeal of orders imposing sanctions 128.5 and 2023. These sanctions were imposed upon the

authority of Code of Civil Procedure section 177.5, *which authorizes sanctions in criminal and civil cases* 'for any violation of a lawful court order.' This authority is different from and in addition to the authority provided by sections 128.5 and 2023, and hence a review of a section 177.5 order is achieved by the regular means (appeal) rather than the special proceeding (writ petition) implied by section 904." (Italics added.)[3]

Migdal sought review of this order by the Supreme Court; his petition was denied November 1, 1989. The appellate department of the superior court issued its order upholding the award of sanctions and certifying the matter to this court August 10, 1990. (Rule 63(a).) By order of the presiding justice of this court, the matter was transferred here and is now presented for decision. (Cal. Const., art. VI, § 11; § 911; rule 62(a).) Accordingly, to secure uniformity of decision or to settle important questions of law, we have power similar to that of the superior court to review the matter and make such orders and judgments as are necessary for its resolution. (*Ibid.*) ▮ ▮▮▮ We therefore review the record and the arguments de novo. (*People* v. *Hallman* (1989) 215 Cal.App.3d 1330, 1334, fn. 3 [264 Cal.Rptr. 215].)[4]

## DISCUSSION

Two issues are presented: the applicability of section 177.5 to criminal proceedings in general, and the propriety of the specific award made against Migdal if the section does apply. The text of the statute, enacted in 1982, reads as follows:

"A judicial officer shall have the power to impose reasonable money sanctions, not to exceed fifteen hundred dollars ($1,500), notwithstanding any other provision of law, payable to the county in which the judicial officer is located, for any violation of a lawful court order by a person, done without good cause or substantial justification. This power shall not apply to advocacy of counsel before the court. For the purposes of this section, the term 'person' includes a witness, a party, a party's attorney, or both.

---

[3] Respondent municipal court argues our denial of this writ petition in the language of this order should be accorded the effect of law of the case in this appeal. This contention is without merit. The substance of the order stated the petition for writ of mandate or prohibition was denied because an adequate remedy existed by way of appeal; had we wished to resolve the substantive issue presented here by way of the earlier writ proceedings, we would not have expressly reserved the issue for resolution on appeal. We did not reach the merits of the statutory interpretation question by denying the request for writ. (See *People* v. *Pacini* (1981) 120 Cal.App.3d 877, 883-885 [174 Cal.Rptr. 820]; 9 Witkin, Cal. Procedure (3d ed. 1985) § 739, pp. 708-709.)

[4] An order imposing money sanctions on counsel is appealable as a collateral matter. (*Caldwell* v. *Samuels Jewelers* (1990) 222 Cal.App.3d 970, 975-976 [272 Cal.Rptr. 126].)

"Sanctions pursuant to this section shall not be imposed except on notice contained in a party's moving or responding papers; or on the court's own motion, after notice and opportunity to be heard. An order imposing sanctions shall be in writing and shall recite in detail the conduct or circumstances justifying the order."

Migdal's arguments against a broad reading of the statutory term "judicial officer" (such as would include judges or magistrates[5] presiding over any criminal matters) are grounded in the legislative history of the section. Specifically, he points to references in the Legislative Counsel's Digest accompanying the bill which speak of "existing statutory law" (i.e., § 128.5) which authorizes orders for payment of expenses incurred by reason of frivolous or delaying action or tactics. The bill's author sought to supplement this "existing statutory law" by adding this provision for imposition of money sanctions for violation of a lawful court order by a witness, party, or party's attorney. (Legis. Counsel's Dig., Assem. Bill No. 3573 (1981-1982 Reg. Sess.).)

Migdal also relies on the third reading analysis by the Assembly Office of Research of Assembly Bill No. 3573, which again referred to the "existing law" authorizing judicial officers to enforce judicial orders, including both the contempt mechanism and the then-recent enactment of section 128.5. The third reading file stated the bill would give courts additional authority to impose monetary sanctions, and commented:

"Courts seek this authority on the basis that existing contempt authority does not give them adequate power to ensure orderly and efficient operation of the courts, including the use of innovative methods such as structured pre-trial conferences. It is also argued that existing authority to impose fines for frivolous or dilatory action is not adequate to prevent abuse caused by both parties and that such authority does not permit counties to recoup costs for inappropriate delays." (Assem. Office of Research, 3d reading analysis of Assem. Bill No. 3573 (1981-1982 Reg. Sess.).)

Based on these indications of legislative intent, and on the section's use of the term "reasonable money sanctions" (customarily used in the civil discovery context; see, e.g., § 2023), Migdal contends section 177.5 was

---

[5] The municipal court which assessed sanctions in this felony matter was acting as a magistrate in scheduling the preliminary examination. (Pen. Code, §§ 808, subd. 4, 859b.) "When sitting as a magistrate, a judge or justice does not have the powers of his court but only the limited powers of a magistrate. [Citations.]" (4 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) § 1809, pp. 2142-2143.) It seems evident, however, that a magistrate qualifies as a "judicial officer" within the meaning of section 177.5, and the parties have not challenged the municipal court's power to assess sanctions in that particular capacity, instead addressing the broader issue of the section's applicability to any criminal proceedings.

intended solely to supplement the provisions of section 128.5. In *People* v. *Cook* (1989) 209 Cal.App.3d 404, 406 [257 Cal.Rptr. 226], it was held the Legislature did not intend that section 128.5 apply in criminal actions. Migdal argues section 177.5 must likewise be restricted in scope of applicability to civil proceedings. He contends the nature of civil proceedings, where private parties may be forced to incur unnecessary expenses of time and/or money because of abusive tactics by their opponents, is so different from criminal court matters, where public employees' duties frequently require their ongoing presence to handle long calendars of different matters, that court awards of money sanctions against beleaguered public defenders or prosecutors could not have been intended by the Legislature.

■ To analyze these arguments, the rules of statutory interpretation as set forth in *Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379 [241 Cal.Rptr. 67, 743 P.2d 1323], must be applied:

"Pursuant to established principles, our first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided. The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. [Citations.] Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation. [Citation.] ■ Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent. [Citations.] ■ A statute should be construed whenever possible so as to preserve its constitutionality. [Citations.]" (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.*, *supra*, 43 Cal.3d at pp. 1386-1387.)

■ As the court in *People* v. *Cook*, *supra*, 209 Cal.App.3d 404, 406-407 explained, unless the wording of a statute is open to only one possible interpretation, the plain language of the statute is not dispositive, nor is its placement in a particular part or article of a code. Absent a single possible interpretation, legislative history must be explored. (*Ibid.*)

■ We first examine the plain language and location of the statute for any indication of the intended scope of the statute. While admittedly not dispositive, the location of section 177.5 in chapter 4, "Incidental Powers and Duties of Judicial Officers," of title 2, "Judicial Officers," of part 1, "Of Courts of Justice" is at least suggestive to us of the generic nature of this

section, applicable to both criminal and civil actions. Section 177.5 was placed between section 177, governing judicial officers' conduct of court proceedings, and section 178, authorizing punishment for contempt. In *People* v. *Cook, supra,* 209 Cal.App.3d at page 407, the court observed section 177 "obviously" was intended to apply to all courts; the same seems to be true of section 178. ■ ■■ ■■ ■■ Some indication of legislative intent that section 177.5 have broad applicability may thus be inferred.[6]

■■ In examining the plain language of the section, it is useful to compare and contrast the broad language of section 177.5 (stating "judicial officers"[7] may impose sanctions payable to the county for any violation of a "lawful court order," "done without good cause or substantial justification") with the terms of art used in section 128.5 (a "trial court" may order reasonable expenses to be paid to an opponent as a result of "bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay"). This comparison leads to the conclusion the specialized language of section 128.5, intended to deal with the problems that arise in civil litigation, was not utilized in section 177.5 because the Legislature sought to pursue a more general approach that was not limited to a particular kind of business of the court system.

In *Moyal* v. *Lanphear* (1989) 208 Cal.App.3d 491, 499 [256 Cal.Rptr. 296], this court observed that the "apparent purpose" of section 177.5 was to compensate public agencies (such as the courts) for the cost of unnecessary hearings. It is interesting to note that the bill as originally proposed included language authorizing an award of sanctions payable either to the county or a party; however, the portion concerning payment to a party was deleted before enactment. (Assem. Office of Research, *supra,* 3d reading analysis of Assem. Bill No. 3573.) We believe the provision in the section that payment of sanctions be made to the county in which the court is situated (rather than to any opposing party who has incurred expenses due to the conduct of the sanctioned party) points to a conclusion that criminal

---

[6] Placement of a statute in the Code of Civil Procedure does not of itself restrict the applicability of the law. See *People* v. *Cook, supra,* 209 Cal.App.3d at page 407, for a discussion of other Code of Civil Procedure sections which apply to criminal actions (e.g., § 170.6, subd. (1)). Other such applicable sections of that code include, but are not limited to, section 12, "Computation of time" (*People* v. *Twedt* (1934) 1 Cal.2d 392, 399 [35 P.2d 324]; see 1 Witkin & Epstein, Cal. Criminal Law, *supra,* § 372, p. 426); section 128, enumerating the statutory powers of courts (see *People* v. *Smith* (1970) 13 Cal.App.3d 897, 907 [91 Cal.Rptr. 786, 52 A.L.R.3d 875]), particularly the power to administer oaths (§ 128, subd. (a)(7); see *People* v. *Barry* (1957) 153 Cal.App.2d 193, 206 [314 P.2d 531]; see 2 Witkin & Epstein, *op. cit. supra,* § 1178, p. 1357); and section 190 et seq., the Trial Jury Selection and Management Act, especially section 192, stating the chapter applies to civil and criminal cases.

[7] Elections Code section 28 defines "judicial officer": "[A]ny Justice of the Supreme Court, justice of a court of appeal, judge of the superior court, judge of a municipal court, or judge of a justice court."

as well as civil proceedings should be covered by this law. A court may be equally inconvenienced by the failure of a public entity's representative (such as a prosecutor or public defender) to comply with court orders as by any privately retained counsel's failure to do so. Such a sanction payable to the court, not to a party, is a remedy useful to the court in any type of proceeding.[8]

However, despite these preliminary conclusions drawn from the statutory language and placement, we recognize the precise meaning and scope of the statutory terms of section 177.5 are not self-evident any more than were those used in section 128.5 and interpreted in *Cook*. We therefore turn to the legislative history materials.

In the Legislative Counsel's Digest to Assembly Bill No. 3573, the bill which added section 177.5, Migdal relies on the reference to "existing statutory law" (i.e., § 128.5) to argue the two sections are so related as to be indistinguishable. Similarly, the Assembly Office of Research third reading analysis refers the reader to "existing law" on enforcement of orders, including contempt proceedings as well as section 128.5. The Assembly document states the bill will give courts additional authority to impose sanctions, including as one example the enforcement of the use of "innovative methods such as structured pre-trial conferences." In the report of the Assembly Committee on Judiciary analyzing the bill, the source of the bill is identified as the Superior Court of Los Angeles County. The committee's comments are summarized in the report as follows:

"The source of this bill contends that Section 128.5 is of little or no use when both parties are guilty of dilatory tactics *or in criminal cases when one or both of the attorneys are paid by the county*. Further, the source suggests that existing law does not permit counties to recoup wasted costs (e.g., costs for courtrooms, court personnel, jurors, etc.) resulting from needless delays caused by dilatory tactics of some attorneys." (Italics added.) (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 3573 (1981-1982 Reg. Sess.) as introduced Mar. 15, 1982.) The report goes on to query why existing contempt procedures should be deemed inadequate; however, since the Legislature proceeded to enact the bill that was codified as section 177.5, this

---

[8] The specific question of whether a public employee is individually liable for payment of sanctions, or whether his or her public entity employer shall pay such monies, was not addressed by the parties at any level of these proceedings, nor does the record reflect who paid these sanctions. We express no opinion on this particular question.

We also note that Migdal has raised policy objections to the imposition of sanctions on public employees in the criminal field such as public defenders or prosecutors. Such policy concerns are matters for the Legislature, not this court. Our task is to interpret the statutory language to ascertain the intent of the Legislature so as to effectuate the apparent purpose of the law. (*Dyna-Med, Inc.* v. *Fair Housing & Employment Com., supra*, 43 Cal.3d at p. 1387.)

criticism by staff was apparently disregarded. Evidently, however, the members of the Assembly were presented with the view of the committee staff that the bill had potential applicability to criminal matters. (*Ibid.*)

Similarly, the Senate Committee on Judiciary duly issued its report on the bill and noted that opposition had been received from the District Attorney's Association. In the section of the Senate committee's report entitled "Scope of new sanctions," the author of the report stated:

"The bill would authorize judges[,] in both criminal and civil cases, to fine a party, his attorney, or a witness up to $1,500 for violating a lawful court order whether or not the violation occurred in or out of court." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 3573 (1981-1982 Reg. Sess.) as amended May 3, 1982.) The report then discussed the "potential broadening of the contempt power" represented by the bill, and noted that even negligent or good faith inadvertent failure to comply with the letter of any court order could lead to the imposition of sanctions. (*Ibid.*) Despite this criticism, the version of the bill enacted did not include any requirement that a punishable violation of a court order be "knowing" or "willful."

In the September 29, 1982, enrolled bill report to the governor by his legal affairs secretary, it is stated, "Proponents of this measure[] argue that the law is 'to help eliminate unnecessary delays in civil proceedings.' " Opposition to the bill by the California District Attorneys Association and the State Public Defender was noted, with a recommendation that the bill be considered for veto as unnecessary in light of existing law. However, the bill was signed into law.

We can only conclude from these materials that the Legislature was made aware (as was the governor) of the potential applicability of the proposed law to criminal as well as civil proceedings, and proceeded to make the bill into law over objections from two public agency representatives in the field of criminal law. We believe the broad language of the section is susceptible only of a similar conclusion. Section 177.5 is fully applicable to both criminal and civil matters.

Having concluded the municipal court had the authority to apply section 177.5 in this criminal proceeding, we now examine the propriety of the order sanctioning Migdal for his tardiness to the hearing on the scheduled preliminary examination date. ▮▮ Migdal makes three contentions about the sanction imposed: (1) there was no clear order which he violated; (2) he did not willfully violate any such order, but instead was inadvertently tardy; (3) the order fails to state a basis for the amount of sanctions imposed ($75), such as the actual cost to the district attorney's office or the court of

the late appearance. We discuss these arguments separately; first, however, we set forth the applicable standard of review.

"We review the imposition of monetary sanctions for a prejudicial abuse of discretion. (*Moyal* v. *Lanphear* (1989) 208 Cal.App.3d 491, 501.) Where a trial court has discretion to decide an issue, it will be reversed on appeal only where it clearly appears that a prejudicial abuse of discretion has occurred. [Citation.] However, trial court discretion is not unlimited, and reviewing courts have never ascribed to judicial discretion a potential without restraint." (*Templeton Grading & Excavating* v. *Superior Court* (1990) 226 Cal.App.3d 415, 420 [277 Cal.Rptr. 18].)

 Migdal is not on solid ground when he claims there was no court order that was violated here within the meaning of the section. As appointed counsel for Tabb, Migdal had a professional duty of constitutional dimension to appear for his client at scheduled court hearings. He was present at one of the two hearings at which the preliminary hearing date was set and confirmed. No separate order commanding an attorney to be present to appear for his or her client on such a routine matter should be or was required. Although there had been some talk between the parties of arranging a continuance, as far as the court knew the preliminary hearing was set to proceed as scheduled. Migdal had the duty to obtain the continuance, as was ultimately done.

With regard to the issue of any willful violation of the order, Migdal fails to recognize that the language of section 177.5 requires not willfulness but a "violation of a court order by a person, done *without good cause or substantial justification*." Apparently, Migdal seeks to have the standards for a civil contempt adjudication read into the statute. (§ 1209, subds. (a) 3 & 5; see, e.g., *In re Stanley* (1981) 114 Cal.App.3d 588, 591 [170 Cal.Rptr. 755].)[9] However, the statute does not incorporate those standards, and its language controls here. The only reason Migdal offered for his tardiness to the hearing was his miscalendaring of it; the court did not abuse its discretion in finding such an explanation for the non-appearance did not constitute good cause or substantial justification.

Finally, Migdal claims the order fails to state a basis for the $75 sanction imposed. This amount was well within the $1,500 limit imposed by section 177.5. The terms of the section do not require the court to relate the amount

---

[9] "An attorney's failure to appear at the scheduled time without valid excuse is a species of direct contempt and may be punished summarily. (*Chula* v. *Superior Court* (1962) 57 Cal.2d 199, 203 [18 Cal.Rptr. 507, 368 P.2d 107, 97 A.L.R.2d 421]." (*In re Stanley, supra,* 114 Cal.App.3d 588, 591.) If such a delinquency can constitute contempt, it can surely provide the basis for a lesser sanction, such as was imposed in this case.

of the sanction to the actual cost to the county traceable to the violation of the court order; the only requirements imposed are that the amount be reasonable, within the limit of $1,500, that proper notice and hearing be given, and that the written order shall " 'recite in detail the conduct or circumstances justifying the order.' " (See *Caldwell* v. *Samuels Jewelers*, *supra*, 222 Cal.App.3d 970, 976-978.)

The order rendered here recites the circumstances of the late appearance, the notice given regarding the hearing on sanctions, and Migdal's admission at the hearing "that he had failed to properly calendar this matter." The court then found: "[A]ttorney Migdal failed to appear on June 16, 1989, in a timely fashion as ordered and sanctions in the amount of $75.00 are imposed pursuant to Code of Civil Procedure § 177.5." This order complies with the formal and substantive requirements of that section and does not constitute an abuse of discretion.

### DISPOSITION

The order is affirmed.

Froehlich, J., and Nares, J., concurred.