[No. C030332. Third Dist. Nov. 15, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
PAUL O. CHONG, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of the FACTS AND PROCEDURE and parts II through VI of the DISCUSSION.

234

**COUNSEL**

John Hardesty, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Stan Cross and Michael J. Weinberger, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SCOTLAND, P. J.**—A jury convicted defendant Paul O. Chong of crimes relating to his participation in an insurance fraud scheme in which luxury cars were purchased in the United States, shipped to Hong Kong for sale in China, and then reported stolen here to collect insurance proceeds. Defendant was granted probation on the condition, among others, that he serve a period of confinement in the county jail. On appeal, he raises a variety of contentions.

In the published portion of this opinion, we reject defendant's assertion that the trial court committed prejudicial error by repeatedly admonishing defense counsel, Maureen Kallins, in the presence of the jury. Defendant does not try to justify Kallins's actions which led to the admonitions. Instead, he argues the "trial judge committed misconduct by rendering undiluted accusations and condemnations in the jury's presence" instead of

"simply excusing the jury when [the court] felt the necessity of admonishing or citing [Kallins's] conduct . . . ."

As we shall explain, due to the many instances of unprofessional conduct in which Kallins made disparaging comments to the court, violated court rulings, and repeatedly interrupted the court and witnesses, it was appropriate for the court to immediately admonish Kallins in public rather than continuously disrupt the trial by excusing the jurors and admonishing her outside their presence.

In the unpublished parts of this opinion, we find no merit in defendant's remaining contentions. Accordingly, we shall affirm the judgment.

FACTS AND PROCEDURE*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

DISCUSSION

I

 Citing 10 instances of allegedly "hostile comments" that the trial court made to defense counsel, Maureen Kallins, in the jury's presence, defendant claims the comments constituted judicial misconduct which interfered with his Sixth Amendment right to counsel.

*Background*

Our review of the record reveals the 10 incidents involved the court responding to Kallins's disrespectful attitude toward the judge or opposing counsel, her disobedience to court rulings, her inappropriate comments in front of the jury, and her repeated interruptions of the proceedings.

The record further shows these incidents were representative of Kallins's unprofessional conduct throughout the course of the trial.

For example, at one point outside the presence of the jury, Kallins accused the trial judge of being intellectually dishonest. This comment occurred during the following exchange after Kallins interrupted the court's explanation of the factual basis for its ruling permitting a copy of a business record to be introduced in evidence. "THE COURT:—you're interrupting. Don't do that, please. [¶] Ms. KALLINS: You're just making up facts. There was no

*See footnote, *ante,* page 232.

testimony. [¶] THE COURT: Ms. Kallins, Ms. Kallins, don't interrupt, please. That was the way I recall the testimony. [¶] Is that the way you recall the testimony, Mr. Hengel [the prosecutor]? [¶] [THE PROSECUTOR]: Yes, your Honor. [¶] Ms. KALLINS: How convenient. [¶] THE COURT: Ms. Kallins, those types of comments are—are rude and uncalled for. And I really appreciate it if you would desist. I realize there's no jury here. But that type of—you must realize that that type of conduct is uncalled for. [¶] Ms. KALLINS: And you must realize that intellectual dishonesty is appalling to me. . . . And to hear the Court paraphrasing the testimony in a way that is less than complete, and is a complete aberration of what was testified to. . . . [¶] THE COURT: All right. We're not—I'm just telling you please try and maintain some modicum of civility here. [¶] Ms. KALLINS: Well, I would— [¶] THE COURT: I would appreciate it."

Although Kallins responded that she wanted to be civil, she again accused the judge of being dishonest. When Kallins explained why she thought the evidence did not support the judge's factual finding, the following exchange occurred: "THE COURT: All right. I appreciate . . . the fact that you're trying to assist the Court. [¶] I would also . . . appreciate [it] if you would just abide by the rules of decorum, . . . without which [we] just can't function. [¶] The classic example is, as I explained to the jury from the first day . . . is that the job of the court reporter is to try and write down everything that's said. And that's why we're not to interrupt. And you—yet you continue to do that in front of the jury, which has been very embarrassing to the Court. [¶] I [would] appreciate it if you would desist from that type of conduct in front of the jury. [¶] Ms. KALLINS: Are you—are you done, your Honor, because I want to say something about that [whereupon Kallins complained that the prosecutor had interrupted her questioning of witnesses]." Then, when the court began ruling that a copy of the original document would be admitted into evidence, Kallins again interrupted, leading to the following exchange: "THE COURT: Ms. Kallins, please, I was making a ruling and you interrupted me again. [¶] Ms. KALLINS: But you're wrong. . . . [¶] THE COURT: [¶] Ms. Kallins, Ms. Kallins, can you please just [abide] by my request— [¶] Ms. KALLINS: Oh, absolutely. Absolutely. [¶] THE COURT:— and not interrupt? [¶] Ms. KALLINS: Absolutely. I am sorry, your Honor. Excuse me. [¶] THE COURT: Somehow I do not detect that that apology is sincere, Ms. Kallins[,] [b]ased upon the tone of voice which you're using, which is very facetious and demeaning. [¶] Ms. KALLINS: And I would—I would join that."

Kallins's derogatory comments during trial were directed at the prosecutor and witnesses as well. At one point in front of the jury, Kallins suggested, without basis, that the prosecutor had "tampered" with evidence. On another

occasion, Kallins subjected a witness to a difficult and sometimes sarcastic cross-examination. After the witness, a records keeper for a shipping company, broke down and cried outside the jury's presence during a recess, Kallins accused the prosecutor of "parad[ing]" the crying witness down the hallway in front of jurors. In Kallins's words: "It was done intentionally, and it was clearly done with the intent to influence the jury that I was the big, bad lawyer who had impeached and made cry the sad, little keeper of the records . . . ."

Near the end of trial, outside the presence of the jury, the court ultimately cited counsel for contempt for violating court orders not to argue with the court's rulings and not to make "snide remarks and asides . . . that are obviously designed to influence the jury in response to the Court's rulings." The court explained: "I've given you a chance to make any kind of . . . apology. And you not only refuse, you don't think it's necessary. [¶] And you have absolutely no insight into the error of your ways as to what is appropriate conduct and what is inappropriate conduct. You've been boisterous and disrespectful and blatantly rude to the Court throughout this trial. [¶] And the main concern that I have is not my own dignity, so to speak, it's the dignity of the Court which is at stake. [¶] But it's my concern . . . that [at] some point the People are not going to get a fair trial if you keep making these asides . . . . [¶] . . . Forcing the opponent to continuously object to improper questions, it's unfair and unethical."

In response, Kallins stated, "Your Honor, listen, I'm 50 years old. I don't want to have my behavior decided like I'm an eight year old. [¶] You show respect for me as well." She then accused the court of being a "bald-face li[ar]," whereupon the court again held her in contempt.

*The Incidents of Which Defendant Complains*

Having illustrated the general nature of Kallins's attitude during trial, we turn to the 10 incidents of which defendant complains, in the order they occurred during trial.

1. The first was a rather innocuous exchange near the beginning of trial involving the automobile dealership's documents relating to defendant's purchase of a BMW. Because the original documents were in the possession of the United States District Court as evidence in a federal action against others involved in the insurance fraud scheme, the prosecutor sought to admit copies of the documents. When Kallins objected, the trial court held a hearing outside the jury's presence. The court concluded the copies would be admissible if a proper foundation were laid in accordance with Evidence

Code section 1550. In the interest of judicial economy, the court allowed the prosecution to mark the documents for identification and to have the dealership's business manager testify that the exhibits were records of defendant's purchase of the BMW. To accommodate Kallins's request to examine the original documents, the prosecutor indicated that he had arranged for the United States Attorney's Office to obtain a federal court order permitting Kallins to see the originals.

When, on cross-examination of the business manager, Kallins asked what documents had been given to the investigator that "we so far have not been able to see," the court sustained the prosecutor's objection that the question was "irrelevant and misleading" and ordered "the question be stricken." Despite the court's ruling, Kallins again asked the witness about an original document which "so far the jury hasn't been able to see" and noted that, "for whatever reason, that original is a carbon, isn't that right?" When the prosecutor objected, the court admonished Kallins that her statement "the jury has not been able to see [the original document] is gratuitous and irrelevant. And in my opinion, it tends to inject extraneous matters into these proceedings, which we've discussed extensively outside the presence of the jury. And as you know, the Court has been spending some time addressing that very issue. [¶] . . . [I]t will be my decision to make as to whether . . . [the jurors must] see the originals or whether . . . the copies are [admissible] as a legal matter. . . . [¶] So that's the issue that's pending outside their knowledge . . . [¶] . . . [and] why you shouldn't be bringing it up."

The following colloquy then occurred: "Ms. KALLINS: Look, Judge, this witness testified he gave the originals to [the investigator]. [¶] THE COURT: I don't want to argue— [¶] Ms. KALLINS: That's all I'm saying. [¶] THE COURT: —Ms. Kallins. [¶] Ms. KALLINS: I'm not arguing. [¶] THE COURT: Yes, you are. I just sustained the [objection]. [¶] Ask your next question. [¶] Ms. KALLINS: Okay. That's fine. That's absolutely fine. That's correct."

2. When Kallins later disregarded the court's direction to "not argue with the Court in front of the jury" and demanded that the court explain a ruling, the following exchange occurred: "THE COURT: . . . Ms. Kallins, it's not your position to interrogate me in front of the jury. [¶] Ms. KALLINS: Well, I don't mean to interrogate you, your Honor. [¶] THE COURT: Well, don't do it. [¶] Ms. KALLINS: Well— [¶] THE COURT: Listen to me, I'm making a ruling. You do not argue with the Court in front of the jury. You know that."

3. Kallins objected to the prosecutor's attempt to use an overhead projector to show to the jury a document which had been marked for

identification but not yet received in evidence. Overruling the objection, the court explained that, based upon its earlier discussion with counsel, it was satisfied the document ultimately would be admitted and that, if the court was wrong, Kallins could move for a mistrial. Kallins stated: "So in other words, you can put anything you want on the [overhead projector] and later you ask to admit it, is that the ruling?" The court replied: "Now, Ms. Kallins, you're being factitious [we assume the court meant facetious or the court reporter misreported the comment]."

4. When the prosecutor objected to the lack of foundation for introduction of a defense exhibit, Kallins stated: "Maybe [the prosecutor] will stipulate that [the exhibit] was sent to me as 122 in discovery . . . and this can be entered into evidence so the jury can take a look at it at this time." The prosecutor again objected, and the following exchange occurred: "THE COURT: Remember, Ms. Kallins, we [had an] agreement before court that we weren't supposed to ask each other about stipulations in front of the jury[.] [¶] Do you remember that? [¶] Ms. KALLINS: Yes, your Honor, I remember a lot of what we talked about before the Court, but this was given to me in discovery. I don't see why the jury shouldn't be able to see it—wait a minute, your Honor. [¶] THE COURT: Wait. This is an agreement that you agreed to— [¶] Ms. KALLINS: Right. [¶] THE COURT: —that neither side would ask for a stipulation in front of the jury. So let's try to abide by the agreement that we've made. [¶] . . . Q (By Ms. Kallins) This is Defense B, without talking about what's on it, because we know it's not in evidence because it seems like my things can't come into evidence. [¶] . . . [¶] THE COURT: Stop for just a second. Ms. Kallins, please do not make gratuitous comments such as you just did— [¶] Ms. KALLINS: I'm not. [¶] THE COURT: —that some of my things can't come [in]. [¶] Ms. KALLINS: None of my things. It's not some, it's none. [¶] THE COURT: Would you please listen to what I'm telling you? [¶] Ms. KALLINS: Yes. [¶] THE COURT: When the Court admonishes you to do something, it is your job, as an officer of the Court, to follow that admonition. [¶] Ms. KALLINS: Okay. Now— [¶] THE COURT: And not persist in defiance of the Court's ruling. [¶] Ms. KALLINS: I am. [¶] THE COURT: So ask the next question. [¶] Ms. KALLINS: I am. [¶] THE COURT: Abide by the rulings. When the jury leaves, you can put your objections more particularly on the record— [¶] Ms. KALLINS: Thank you. [¶] THE COURT: —in as much detail as you [would] like."

5. Testimony was received from the export documentation supervisor for the shipping company which transported defendant's BMW to Hong Kong. She traveled from Southern California to appear as a prosecution witness. Although the witness had a return flight that evening, Kallins asked to continue cross-examination the following morning because she needed time

to compare the original documents with the copies she had received from the prosecution. Noting "we were I suppose hoping that this witness could be allowed to go home," the court asked Kallins if it was "feasible" for her to review the documents and then cross-examine the witness before the court recessed for the evening. When Kallins replied, "No. I have to look through the documents. I'm sorry," the court told the witness the district attorney's office had a "victim witness unit" that would assist her in making new flight arrangements.

During cross-examination the following day, Kallins asked the witness whether, if the United States Customs had validated a shipping document, the company was required to keep a copy of the validation. When the witness answered, "Not necessarily, no," Kallins retorted, "So Customs is sort of irrelevant to you?" The court sustained an objection the question was argumentative, but Kallins persisted by asking: "Well, is Customs irrelevant to the process?" Again, the prosecutor objected. As the court began to comment on the objection, Kallins repeatedly interrupted. After asking Kallins to "[p]lease eliminate the asides when the Court makes a ruling," the judge asked Kallins to explain the relevance of the question. The following exchange then occurred. "Ms. KALLINS: Well, I'll pass. [¶] THE COURT: I don't appreciate the [facetious] remark on your part. [¶] Ms. KALLINS: Well, I didn't appreciate the Court's comments on my questioning."

6. The agent from whom defendant purchased an insurance policy for the BMW and the company's claims representative who authorized payment after defendant reported the car stolen both acknowledged they had not seen the BMW before payment on the claim was made. During cross-examination of the claims representative, Kallins asked, "under what circumstances [does an insurer pay a claim without having seen the car]?" The prosecutor objected that the question was irrelevant.

When the court asked Kallins to explain the relevance, the following occurred: "Ms. KALLINS: Well, your Honor, this witness is from the insurance company. You're gonna tell me you're going to put my client in prison for insurance fraud, you're not going to have the insurance company explain how they paid a claim on something they never saw? [¶] THE COURT: Ms. Kallins—Ms. Kallins— [¶] [THE PROSECUTOR]: Your Honor, I have to object. [¶] At this point, there's been no contention that her client is going to prison . . . [¶] or anything of that nature. [¶] THE COURT: Miss Kallins, that is really a— [¶] Ms. KALLINS: Oh, but— [¶] THE COURT: —a situation—will you let me finish, please, of gross misconduct on your part. [¶] Ms. KALLINS: But saying that my client's not going to prison is not gross misconduct on [the prosecutor's] part? [¶] THE COURT: Will you quit interrupting,

please? [¶] Ms. KALLINS: Excuse me. [¶] THE COURT: I am going to cite you for misconduct for that comment. [¶] I explained to the [j]ury when they took their oath not to consider penalty or punishment, each one of them. And you're attempting to interject that and have them violate the very oath that they took. [¶] Now, Ladies and Gentlemen, at this time I do want to admonish you once again that statements of [counsel] are not evidence, and they are not to be considered by you as evidence. [¶] And I again want to remind you of the law, which I've already read to you. The question of penalty or punishment [is] solely for the Court to decide, and [is] not relevant to your areas of inquiry in this matter. . . . [¶] I am going to have that stricken from the record, [Ms. Kallins's] comment about prison and— as well as [the prosecutor's] comment and reply. [¶] Ms. KALLINS: Thank you. [¶] THE COURT: Please stick to the issues, Ms. Kallins. [¶] Ms. KALLINS . . . I sincerely think I am sticking to the issues. [¶] THE COURT: Not when you interject that type of gross prejudice into the— [¶] Ms. KALLINS: Well, I think it's very difficult to—to—to work in an atmosphere where everything is considered not an issue by the Court. [¶] So I'm—I'm really trying to stick to the issues, if I could. Only I'm just trying—having trouble seeing what they are."

7. Later, during the prosecutor's redirect examination of the claims representative, Kallins interjected a comment suggesting the prosecutor had "tampered with the evidence[.]" The court responded: "Well now, Ms. Kallins, that is [an] absolutely improper comment to make, and I'm going to cite you for misconduct again."

8. During cross-examination of a participant in the insurance fraud scheme who testified against defendant, Kallins apparently stood close to the witness. The following exchange occurred: "[THE PROSECUTOR]: I request that Counsel distance herself from the witness, please. [¶] Ms. KALLINS: Gladly. [¶] THE COURT: . . . Ms. Kallins your comment will be stricken from the record. You're admonished to cease and desist from these aside comments. [¶] Normally speaking, although I haven't been enforcing it, the attorneys ask permission to approach the witness. And with this particular witness, I suggest that's the best way to proceed."

9. During examination of the Department of Insurance investigator, Kallins persisted in asking irrelevant and argumentative questions to which objections were sustained. After its fifth ruling on the objections, the following exchange occurred: "THE COURT: . . . The objection's sustained to— the question you asked is irrelevant. Move on. [¶] Ms. KALLINS: Oh, okay. All right. I'm moving on. All right. Don't get upset or annoyed. [¶] THE COURT: All right. Miss Kallins— [¶] Ms. KALLINS: Yes, your Honor. [¶]

THE COURT: —no further asides like that. Don't tell the Court what attitudes to take. You be more concerned about your own behavior in this case. [¶] Ms. KALLINS: Yes, your Honor. [¶] THE COURT: Do you understand what I'm saying? [¶] Ms. KALLINS: Yes, your Honor. But you seem to be so upset about the ruling. [¶] THE COURT: I'm not upset. [¶] Ms. KALLINS: Okay. [¶] THE COURT: I'm just telling you if you persist in this demeanor, I'm going to excuse the jury. [¶] Ms. KALLINS: Well— [¶] THE COURT: So it's up to you. I've tried—[brief interruption by Kallins]—to be as patient as I can. [¶] Ms. KALLINS: Yes, your Honor. [¶] THE COURT: But you are trying the Court's patience. [¶] Ms. KALLINS: Yes, your Honor. [¶] THE COURT: Now, I ask you respectfully to abide by the Court's rulings. [¶] Ms. KALLINS: Yes. [¶] THE COURT: And not argue with me when I make a ruling. [¶] Ms. KALLINS: Yes, your Honor."

10. Near the close of trial, during a discussion concerning whether Kallins was seeking to introduce defense exhibit O into evidence, the following exchange occurred: "Ms. KALLINS: . . . I only was offering it if 'N' could come in to show what a real PIERS Report looks like. [¶] Now that the real PIERS Report has been eliminated, the governmen[t] will have to remark [Exhibit O] and offer it themselves. [¶] Does the Court think that that's funny? [¶] THE COURT: Pardon me? [¶] Ms. KALLINS: Does the Court think that's funny? I saw you laugh. [¶] THE COURT: Ms. Kallins, once again, pursuant to the previous order, I'm going to admonish you please desist from disrespectful comments to the Court. [¶] Ms. KALLINS: I didn't mean disrespect, your Honor. [¶] THE COURT: Yes, you did. [¶] Ms. KALLINS: No, that's my analysis. [¶] THE COURT: You've been around long enough to know what's proper [courtroom] behavior and what is improper."

*Analysis*

Defendant wisely does not attempt to defend Kallins's actions; in the words of his appellate attorney, defendant "does not excuse his trial counsel's conduct." He also concedes the trial court had a duty to control the proceedings. However, he believes the court committed misconduct by repeatedly admonishing Kallins in the jury's presence. According to defendant, the court could have avoided this problem by simply excusing the jury when it needed to admonish Kallins.

 Kallins never requested that, if the court intended to admonish her, it do so outside the jury's presence. Nor did she ask the court to advise the jurors that the judge's comments to Kallins were not intended to imply any judgment by the court as to the merits of defendant's case.

Perhaps Kallins did not make such requests because of her misguided trial tactics, which seemed to include alienating the witnesses, the prosecutor and

the court, and baiting them to snap at her, thereby apparently attempting to create an impression that "the system" was against the defendant. In any event, because the trial court was not asked to so admonish the jury, defendant's claim of judicial misconduct is waived. (*People* v. *Fudge* (1994) 7 Cal.4th 1075, 1108 [31 Cal.Rptr.2d 321, 875 P.2d 36]; *People* v. *Anderson* (1990) 52 Cal.3d 453, 467-468 [276 Cal.Rptr. 356, 801 P.2d 1107]; *People* v. *Wright* (1990) 52 Cal.3d 367, 411 [276 Cal.Rptr. 731, 802 P.2d 221].)

Nevertheless, because defendant contends that Kallins's failure to object and seek curative jury admonitions constituted ineffective assistance of counsel (*Strickland* v. *Washington* (1984) 466 U.S. 668, 687-689 [104 S.Ct. 2052, 2064-2065, 80 L.Ed.2d 674, 693-694]; *People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1]), we address the merits of his claim of error.

As we shall explain, in light of the nature and extent of Kallins's insolent and contemptuous conduct, the trial court's admonishments of Kallins in front of the jury were necessary and did not constitute misconduct.

Our legal system, indeed the social compact of a civilized society, is predicated upon respect for, and adherence to, the rule of law. And "ethical considerations can no more be excluded from the administration of justice, which is the end and purpose of all civil laws, than one can exclude the vital air from his room and live." (Dillon, The Laws and Jurisprudence of England and America, Lecture I (Boston: Little, Brown and Company, 1894), p. 17.)

In other words, it is vital to the integrity of our adversary legal process that attorneys strive to maintain the highest standards of ethics, civility, and professionalism in the practice of law. In order to instill public confidence in the legal profession and our judicial system, an attorney must be an example of lawfulness, not lawlessness.

Accordingly, an attorney, "however zealous in his client's behalf, has, as an officer of the court, a paramount obligation to the due and orderly administration of justice . . . ." (*Chula* v. *Superior Court* (1952) 109 Cal.App.2d 24, 39 [240 P.2d 398].) An attorney must not willfully disobey a court's order and must maintain a respectful attitude toward the court. (*Ibid.*; Bus. & Prof. Code, §§ 6068, 6103.)

When, during the course of trial, an attorney violates his or her obligations as an officer of the court, the judge may control the proceedings and protect the integrity of the court and the judicial process by reprimanding the

attorney. (*People* v. *Fudge, supra,* 7 Cal.4th at p. 1108; *DeGeorge* v. *Superior Court* (1974) 40 Cal.App.3d 305, 312 [114 Cal.Rptr. 860].)

Because "events happen rapidly during the course of a trial . . . it is not always feasible to excuse the jury in order that counsel may be reprimanded"; and, "when counsel defies the authority of the court in the presence of the jury, it is sometimes necessary to reprimand counsel in the presence of the jury." (*People* v. *Dickenson* (1962) 210 Cal.App.2d 127, 140 [26 Cal.Rptr. 601].)

In fact, to allow an attorney to engage in unprofessional conduct before the jury without a prompt and strong response from the court undermines the judicial process. If, without rebuke, an attorney does not show proper respect for the judge and the proceedings, how can a juror be expected to do so? If an attorney is permitted to flout a court's ruling, how can a juror be expected to adhere to the rule of law as instructed by the court?

By mocking the court's authority, an attorney in effect sends a message to the jurors that they, too, may disregard the court's directives and ignore its authority. This type of attorney misconduct must be dealt with in the jury's presence in order to dispel any misperception regarding the credence that jurors must give the court's instructions. Furthermore, when an attorney engages in repetitious misconduct, it is too disruptive to the proceedings to repeatedly excuse the jury to admonish counsel.

For these reasons, the court may act swiftly and strongly in the presence of the jury to admonish an attorney if necessary to preserve the integrity of the judicial process. The court commits misconduct only "if it persistently makes discourteous and disparaging remarks to defense counsel so as to discredit the defense or create the impression [that the court] is allying itself with the prosecution." (*People* v. *Carpenter* (1997) 15 Cal.4th 312, 353 [63 Cal.Rptr.2d 1, 935 P.2d 708]; *People* v. *Fudge, supra,* 7 Cal.4th at p. 1107; *People* v. *Clark* (1992) 3 Cal.4th 41, 143-144 [10 Cal.Rptr.2d 554, 833 P.2d 561].)

 Viewed singularly or collectively, the judge's comments in this case did not constitute judicial misconduct because they were appropriate responses to Kallins's inappropriate actions and remarks (cf. *People* v. *Fatone* (1985) 165 Cal.App.3d 1164, 1170-1181 [211 Cal.Rptr. 288]), and because the comments did not discredit the defense theory or create an impression that the court was allying itself with the prosecution. Moreover, the jury was instructed in accordance with CALJIC No. 17.30 that the court had not intended by anything it had said or done to intimate or suggest what the jury

should find to be the facts on any questions submitted and, if the court had said or done anything that would seem to so indicate, the jury was instructed to disregard it and form its own opinion. We presume the jury followed these instructions and did not penalize defendant because of the court's response to Kallins's egregious misconduct. (*People* v. *Harbolt* (1988) 206 Cal.App.3d 140, 158 [253 Cal.Rptr. 390]; *People* v. *Dickenson, supra,* 210 Cal.App.2d at pp. 138-139.)

Given the numerous occasions in which Kallins challenged the court's authority in the presence of the jury, made disparaging comments toward the court, opposing counsel and a witness, and violated court rulings, it would have been unreasonable for the court to continuously disrupt the trial and excuse the jury in order to admonish Kallins in private.

In a fit of diatribe after the court held Kallins in contempt outside the presence of the jury and directed her to stop disobeying court orders and acting in a rude and disrespectful manner, Kallins blurted out: "You show respect for me as well. I've shown unbelievable respect for this Court in the fashion of [the] most unfair trial I've ever experienced in 22 years of practicing law. [¶] This place is unbelievable. I've never seen anything like it."

Kallins is flatly wrong in her assessment of the fairness of the trial. Our review of the record reveals that the trial court did not commit any prejudicial error in its rulings and that it was remarkably courteous and restrained when dealing with Kallins's gross misconduct, which created what could be described as a "trial from hell."

Kallins also is flatly wrong in the self-assessment of her conduct. In our collective 97 years in the legal profession, we have seldom seen such unprofessional, offensive and contemptuous conduct by an attorney in a court of law.

The trial judge acted appropriately and commendably in attempting to restrain an attorney who was out of control.

II-VI*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante,* page 232.

## DISPOSITION

The judgment is affirmed.

Blease, J., and Morrison, J., concurred

Appellant's petition for review by the Supreme Court was denied February 23, 2000.