[No. G043230. Fourth Dist., Div. Three. May 23, 2011.]

SCOTT C. MOODY, INC., Plaintiff, v.
STAAR SURGICAL COMPANY, Defendant;
DANIEL J. CALLAHAN, Objector and Appellant.

COUNSEL

Callahan & Blaine, Daniel J. Callahan, Jill A. Thomas, Brian J. McCormack and David E. Hayen for Objector and Appellant.

OPINION

**MOORE, J.**—The court made a ruling at sidebar that counsel should not inquire into a particular area. Counsel proceeded to do exactly what the court ordered him not to do. The trial court found counsel knowingly violated its order and imposed a $1,500 sanction under Code of Civil Procedure section 177.5. (Unless otherwise noted, all statutory references are to the Code of Civil Procedure.) We affirm the court's order.

I

FACTS

Appellant Daniel J. Callahan, an attorney at law, appeals from an order imposing sanctions against him in the amount of $1,500 pursuant to section 177.5. The following colloquy occurred in open court between the trial court and Callahan outside the presence of the jury:

"The Court: Mr. Callahan.

"[Counsel]: Yes, your Honor.

"The Court: At side bar I specifically and categorically instructed you not to ask the question, why did Mr. Greiling not want the restrictive covenant in his contract; right?

"[Counsel]: That must be true.

"The Court: Is it or is it not true?

"[Counsel]: I can't tell you exactly.

"The Court: You can't recall?

"[Counsel]: I know we had the conversation. How it came out, if I violated that instruction, I apologize.

"The Court: I said you could ask him why the restrictive covenant wasn't in there and whether Mr. Greiling wanted it, but I specifically made the distinction between whether he wanted it and why he wanted it, and you then expressly asked that question.

"[Counsel]: I must say, when I left that side bar it was fairly obvious I was not totally certain on what your ruling was." ·

The court then inquired of the two other lawyers appearing on the matter, one of them Callahan's cocounsel. Both confirmed the court's order was just as the court stated it.

The court's colloquy with Callahan continued:

"The Court: You are apparently the only one that didn't understand plain English.

"[Counsel]: Apparently not.

"The Court: Now, if you wonder why my annoyance appears to you as disdain, it is annoyance when you do not obey my orders. That was a direct order which you directly and willfully violated." ·

"[Counsel]: Your disdain for me was a couple of weeks ago and that was the basis of the nonsuit—

"The Court: That's the end of it." A brief recess was taken.

A minute order reads: "[T]he Court's Order to Mr. Callahan was made in the context of an ongoing issue concerning whether the Court should permit Defendant to introduce evidence that one of Staar's Regional Manufacturer Representatives (Mr. Greiling) had wanted to exclude a Restrictive Covenant from his agreement with Staar because he claimed such a covenant had been enforced against him by another court in another case in a different state. The Court had consistently ruled that another Court's ruling on the enforceability of such covenants on different facts was not probative, and even if probative, that its probative value was substantially outweighed by its undue prejudicial effect under [Evidence Code] 352."

Callahan asked two questions at issue here. One was: "Why wasn't the restrictive covenant placed into Mr. Greiling's contract?" Another was: "Why didn't Mr. Greiling not want it in, did he tell you?"

The court's minute order states: "Mr. Callahan argues he did not violate the Order because he actually only asked a 'yes or no' question ('Did he tell

you?') as opposed to a question seeking reasons why Mr. Greiling did not want the restrictive covenant in his contract. [¶] This is not correct as a reading of the Transcript reveals. In fact, Mr. Callahan asked the forbidden question twice in violation of this Court's Order. . . . 'Why wasn't the restrictive covenant placed in Mr. Greiling's contract?' [¶] When the witness failed to give the desired answer, he then asked a compound question containing both the forbidden question and a second question added at the end namely. 'Did he tell you?' The fact that he asked a compound question on the second violation does not nullify the offending part of the compound question. Nor does it void the first violation."

But when the court cited Callahan to show cause why sanctions should not be ordered, it made no mention of the question "Why wasn't the restrictive covenant placed into Mr. Greiling's contract?" Apparently the trial judge concluded the question did not violate its order. Accordingly we will not consider that question as relevant to our analysis.

On January 5, 2010, the court gave written notice it was considering ordering sanctions and later conducted a hearing: "Defendant's Counsel, Mr. Daniel J. Callahan (State Bar No. 91940) is ordered to show cause at 1:30 PM on Monday January 25, 2010 why he should not be sanctioned $1500 pursuant to CCP 177.5 for violating this Court's order that Mr. Callahan refrain from asking the following question of Plaintiff's witness, Mr. Robert Kenz. [¶] 'Why did Mr. Greiling not want the restrictive covenant in his contract?' " After a sanctions hearing,[1] the court imposed the sanctions.

## II

## DISCUSSION

"Every court shall have the power to do all of the following: [¶] . . . [¶] (3) To provide for the orderly conduct of proceedings before it, or its officers. [¶] (4) To compel obedience to its judgments, orders, and process . . . . [¶] (5) To control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto." (§ 128, subd. (a)(3)–(5).) "It is the responsibility of judges to achieve a just and effective resolution of each general civil case through active management and supervision of the pace of litigation from the date of filing to disposition." (Cal. Rules of Court, rule 3.713(c).) Trial court performance standards advise that "[t]he trial court takes appropriate responsibility for the enforcement of its orders." (Cal. Stds. Jud. Admin., § 10.17(b)(3)(E).)

---

[1] At oral argument, counsel could cite to no alleged error during the sanctions hearing itself.

■ "It is the duty of an attorney to do all of the following: [¶] . . . [¶] (b) To maintain the respect due to the courts . . . ." (Bus. & Prof. Code, § 6068, subd. (b).) "In other words, it is vital to the integrity of our adversary legal process that attorneys strive to maintain the highest standards of ethics, civility, and professionalism in the practice of law. In order to instill public confidence in the legal profession and our judicial system, an attorney must be an example of lawfulness, not lawlessness. [¶] Accordingly, an attorney, 'however zealous in his client's behalf, has, as an officer of the court, a paramount obligation to the due and orderly administration of justice . . . .' [Citation.] An attorney must not willfully disobey a court's order and must maintain a respectful attitude toward the court. [Citations.]" (*People v. Chong* (1999) 76 Cal.App.4th 232, 243 [90 Cal.Rptr.2d 198].)

"A judicial officer shall have the power to impose reasonable money sanctions, not to exceed fifteen hundred dollars ($1,500), notwithstanding any other provision of law, payable to the court, for any violation of a lawful court order by a person, done without good cause or substantial justification. This power shall not apply to advocacy of counsel before the court. For the purposes of this section, the term 'person' includes a witness, a party, a party's attorney, or both." (§ 177.5.)

The imposition of monetary sanctions under section 177.5 " 'is within the discretion of the trial court. That discretion must be exercised in a reasonable manner with one of the statutorily authorized purposes in mind and must be guided by existing legal standards as adapted to the current circumstances.' " (*Winikow v. Superior Court* (2000) 82 Cal.App.4th 719, 726–727 [98 Cal.Rptr.2d 413], quoting from *Moyal v. Lanphear* (1989) 208 Cal.App.3d 491, 501 [256 Cal.Rptr. 296].) Discretion is abused when it exceeds the bounds of reason, all of the circumstances being considered. (*Moyal v. Lanphear, supra,* 208 Cal.App.3d at p. 498.)

Clearly, when Callahan asked the question "Why didn't Mr. Greiling not want it in?" he violated the court's order "not to ask the question, why did Mr. Greiling not want the restrictive covenant in his contract." That he added the words "did he tell you?" does not in any way diminish his violation.

By the time Callahan violated the court's order, the trial was already a week beyond its estimated length. The jury was showing signs of restlessness due to the frequent sidebar conferences. After several weeks of trial, the court stopped placing the sidebar conferences on the court reporter's record, and counsel was told if someone wanted something on the record, they could do

so "on their own time" when the jury was gone. While the original order was not recorded by the court reporter, the record on appeal is sufficient for review.

Callahan claims he did not understand the court's order when he left the sidebar. It is incumbent upon counsel to request clarification when the court issues an order counsel does not understand. (See, e.g., *In re Frankie J.* (1988) 198 Cal.App.3d 1149, 1154 [244 Cal.Rptr. 254].) It is obvious from the record, the trial judge did not believe Callahan's explanation since three of the four persons present understood the court's order.

Under the circumstances in the record before us, we cannot find the trial court abused its discretion. Presumably, if Callahan actually did not have a clear understanding of the court's order, he would have asked for clarification on the spot, brought the matter up at a sidebar conference after the jury left or sought extraordinary relief. Even assuming he did not understand the court's order, which argument is not supported in this record, Callahan opted to venture into the forbidden area and take his chances that an apology would cure a knowing violation of a court order.

Callahan also claims the trial judge was biased against him, although he does not cite to anything in the record showing he moved to disqualify the judge. We have combed the record and find nothing but well-reasoned, articulate, legally sound and courteous rulings from the court. Accordingly, we find this claim, too, lacks merit.

Callahan further contends the question he asked is protected by the advocacy exception in section 177.5. "[A]dvocacy is the act or pleading, arguing, supporting or recommending a particular position or idea." (*People v. Ward* (2009) 173 Cal.App.4th 1518, 1529 [93 Cal.Rptr.3d 871].) Callahan explains his rationale as follows: "The witness, Mr. Greiling, had been previously employed by STAAR and subject to a covenant not to compete in his RMR Agreement. On direct exam by Plaintiffs' counsel, he discussed his two RMR Agreements and the fact that his second Agreement did not contain the restrictive covenant. It was therefore, entirely appropriate for Mr. Callahan to inquire about the removal of the restrictive covenant, particularly where Mr. Greiling was an active participant in the plan with Moody to steal STAAR's confidential customer information to profit from selling B&L's lenses to STAAR's customers." It appears quite obvious from his argument that Callahan's question was not an "act or pleading, arguing, supporting or recommending a particular position or idea," but a calculated decision to violate the court's order.

## III

## DISPOSITION

We affirm the court's order. The clerk of the court is ordered to send a copy of this opinion to the State Bar of California, in compliance with the provisions of Business and Professions Code section 6086.7, subdivision (a).

O'Leary, Acting P. J., and Aronson, J., concurred.