Opinion
CRANDALL, Acting P. J.
I. Introduction and Summary
This appeal involves a $750 sanction issued by the trial court under Code of Civil Procedure section 177.5 against appellant Darryl Genis (Appellant), for failure to appear at several misdemeanor trial readiness conferences. He contends that sanctions against him are unwarranted because another attorney appeared on his behalf at these conferences, because there was no valid court order requiring him to appear at any of the conferences, and because the trial court is prejudiced against him.
Since Appellant neglected to lodge key transcripts as part of the appellate record, we do not know the full sequence of events leading to the issuance of sanctions. This alone is fatal to his appeal. Additionally, we conclude that the trial court did not abuse its discretion.
The trial judge was justifiably frustrated by Appellant’s failure to appear personally at several readiness conferences, after having been ordered to do so, and after having been granted multiple continuances over a period of almost one year. The trial court’s sanction order complies with the formal and substantive requirements of Code of Civil Procedure section 177.5: it is in *Supp. 4 writing, recites the circumstances of the offending conduct, and provides advance notice of potential sanctions, as well as an opportunity to be heard before sanctions were issued.
The court will also address Appellant’s oral advocacy. The foundation of the rule of law is dependent upon lawyers treating judicial officers and each other with respect, dignity and courtesy. The need for civility and dignity is critically important, especially today, with the legal profession and the judicial branch of government under cynical attack from various quarters.
Consisting of repeated tirades and impertinence, and with a tone wholly condescending and accusatory, Appellant’s conduct is a serious and significant departure from acceptable appellate practice, or for that matter, practice in any court of law. If left unaddressed, this sort of advocacy demeans the profession, lowers public respect, and conveys the impression that it is acceptable and effective.
We will not condone this behavior. Instead of issuing additional monetary sanctions, however, we will refer this opinion to the California State Bar for consideration of discipline. Although we do so reluctantly, the tone, tenor and content of Appellant’s appellate argument demand an appropriate response.
II. Procedural History and Statement of Facts
On May 25, 2010, Ronald John Whitus was charged in a criminal complaint with driving, three days earlier, under the influence of alcohol or drugs. Whitus retained Appellant to represent him.
At a trial setting conference on June 28, 2010, Appellant entered a not guilty plea on behalf of Whitus and waived time for trial. Another trial setting conference was scheduled for July 28, 2010.
At the second trial setting conference on July 28, 2010, Appellant again waived time for trial and a third trial setting conference was scheduled for August 18, 2010.
At the third trial setting conference, on August 18, 2010, Appellant again waived time for trial, at which time a trial date of October 12, 2010, and a readiness conference date of October 7, 2010, were assigned.
On the date of the first trial October 12, 2010, Appellant personally appeared. Based upon a finding of good cause, the trial court continued the readiness conference and trial dates until February 3 and 7, 2011, respectively.
*Supp. 5 At the second readiness conference on February 3, 2011, Appellant personally appeared and moved to continue the trial. Based upon a finding of good cause, his oral motion to continue the trial was granted. A third readiness conference was set for April 7, 2011, and a third trial date of April 18, 2011, was selected.
At the third readiness conference on April 7, 2011, Appellant did not personally appear; instead, the appearance was handled by Attorney Midori Feldman. Due to Appellant’s failure to appear, the trial court ordered him to be personally present at a fourth readiness conference scheduled for April 14, 2011. The April 18, 2011 trial date was confirmed.
At the fourth readiness conference on April 14, 2011, Appellant again did not personally appear. As before, Attorney Midori Feldman made the appearance. After noting that it had received an e-mail from Appellant regarding his nonappearance, the trial court ordered him to appear the following day.
At the fifth readiness conference on April 15, 2011, Appellant again did not personally appear. Instead, the appearance was handled by Attorney George O’Neill.
Although the case was resolved through defendant Whitus’s plea of no contest, the trial court put on the record its concerns about the manner in which the case had been handled by Appellant. An electronic copy of these proceedings was provided to Mr. O’Neill for transmission to Appellant.
On the scheduled trial date of April 18, 2011, in Appellant’s presence, the court set the matter for an order to show cause (OSC) hearing regarding sanctions against him.
On June 21, 2011, the trial court held an OSC hearing, after which it issued a sanction order against Appellant in the amount of $750. The trial court’s written order provides, in pertinent part, as follows:
“Pursuant to the notice given on the court’s own motion in open court on April 18, 2011, and after opportunity to be heard, the court finds that Attorney Darryl Genis has violated a lawful order, to wit: he failed to attend readiness conferences on April 7th, 14th, and 15th, 2011, for trial scheduled for April 18, 2011. (San Luis Obispo County Rule of Court 10.08(1).)
“The court finds Mr. Genis to have been without good cause or substantial justification.
*Supp. 6 “Mr. Genis is ordered to pay a monetary sanction in the amount of $750 to the above-entitled court to be delivered directly to the clerk of this department on or before 4:30 p.m. on July 21, 2011 pursuant to Code of Civil Procedure section 177.5.”
After some wrangling in the trial court over the adequacy of the notice of appeal, this appeal followed.
IDE. Standard of Review
The requirements for a valid sanction under Code of Civil Procedure section 177.5 can be summarized as follows: “ ‘Due process, as well as the statute itself, requires that a person against whom Code of Civil Procedure section 177.5 sanctions may be imposed be given adequate notice that such sanctions are being considered, notice as to what act or omission of the individual is the basis for the proposed sanctions, and an objective hearing at which the person is permitted to address the lawfulness of the order, the existence of the violation, and the absence of good cause or substantial justification for the violation.’ ” (People v. Hundal (2008) 168 Cal.App.4th 965, 970 [86 Cal.Rptr.3d 166]; People v. Tabb (1991) 228 Cal.App.3d 1300, 1312 [279 Cal.Rptr. 480].) We apply a deferential standard of review to the trial court’s sanction: “The imposition of monetary sanctions under section 177.5 ‘ “is within the discretion of the trial court. That discretion must be exercised in a reasonable manner with one of the statutorily authorized purposes in mind and must be guided by existing legal standards as adapted to the current circumstances.” ’ ” (Scott C. Moody, Inc. v. Staar Surgical Co. (2011) 195 Cal.App.4th 1043, 1048 [128 Cal.Rptr.3d 89].)
Although discretion is abused when it exceeds the bounds of reason, it is not abused if the facts “ ‘merely afford an opportunity for a difference of opinion. An appellate tribunal is not authorized to substitute its judgment for that of the trial judge.’ ” (In re Woodham (2001) 95 Cal.App.4th 438, 443 [115 Cal.Rptr.2d 431].) Further, an appellate court must accept the factual version that supports the trial court’s determination, and must indulge in the inferences that favor the trial court’s findings. (West Coast Development v. Reed (1992) 2 Cal.App.4th 693, 698 [3 Cal.Rptr.2d 790].)
Relatedly, it is an appellant’s “affirmative obligation to provide an adequate record so that we may assess whether the trial court abused its discretion.” (Vo v. Las Vírgenes Municipal Water Dist. (2000) 79 Cal.App.4th 440, 447 [94 Cal.Rptr.2d 143].) Where the record is silent, all presumptions favoring the sanction order must be resolved in the trial court’s favor. (Gee v. American Realty & Construction, Inc. (2002) 99 Cal.App.4th 1412, 1416 [122 Cal.Rptr.2d 167] (Gee).) “A necessary corollary to this rule is that if the *Supp. 7 record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed.” (Mountain Lion Coalition v. Fish & Game Com. (1989) 214 Cal.App.3d 1043, 1051, fn. 9 [263 Cal.Rptr. 104].)
IV. The Trial Court’s Exercise of Discretion
Our discussion starts (and, one could sensibly say, ends) with reference to the wholly inadequate appellate record supplied by Appellant. Although required to do so under California Rules of Court, rule 8.864(a), Appellant never advised the trial court whether he intended to proceed with or without a transcript of the oral proceedings. Having failed to make an election, he was warned by the clerk, in accordance with California Rules of Court, rule 8.864(c), that his failure to elect would “result in the appeal proceeding without a record of the oral proceedings.” That is exactly what happened.[1]
At oral argument, Appellant stated, at several junctures, that he was under no obligation to provide a transcript of the oral proceedings and that a transcript was unnecessary for purposes of appellate review. He is wrong on both counts.
The oral proceedings in the trial court are highly relevant, as they would provide the best evidence of exactly what occurred at the readiness conferences giving rise to the sanctions order. For example, the transcript of the oral proceedings could provide evidence of the circumstances surrounding Appellant’s failure to appear, whether he was aware of the orders requiring him to appear, and/or whether the trial court displayed any evidence of bias.
Moreover, the clerk’s transcript of the April 15, 2011 readiness conference shows that the trial court specifically made an electronic recording of the factual record giving rise to the OSC hearing and its eventual sanction order. Although this recording was provided to and reviewed by Appellant prior to the OSC hearing, it has neither been transcribed nor supplied as part of the appellate record. Likewise, although the readiness hearing on April 14, 2011 was recorded electronically, it has neither been transcribed nor supplied to us.
When reviewing the trial court’s exercise of discretion, we can think of nothing more relevant than a transcription of the contemporaneous oral proceedings at which the trial court documented its concerns about Appellant’s failures to appear and expressed its intention to issue an OSC.
*Supp. 8 In Snell v. Superior Court (Marshall Hosp.) (1984) 158 Cal.App.3d 44, 49 [204 Cal.Rptr. 200], the court aptly pointed out that “ ‘[i]n the absence of a transcript the reviewing court will have no way of knowing . . . what grounds were advanced, what arguments were made and what facts may have been admitted, mutually assumed or judicially noticed at the hearing. In such a case, no abuse of discretion can be found except on the basis of speculation.’ ”
Although Appellant invites us to speculate about the underlying facts, we decline. It is an appellant’s burden to show reversible error based upon an adequate record. (Ballard v. Uribe (1986) 41 Cal.3d 564, 573 [224 Cal.Rptr. 664, 715 P.2d 624] (Ballard); Cosenza v. Kramer (1984) 152 Cal.App.3d 1100, 1102 [200 Cal.Rptr. 18].) Having failed to provide important transcripts of the oral proceedings, Appellant cannot be heard to complain about the trial court’s exercise of discretion. (Aguilar v. Avis Rent A Car System, Inc. (1999) 21 Cal.4th 121, 132 [87 Cal.Rptr.2d 132, 980 P.2d 846] [rejecting appeal based upon failure to provide a reporter’s transcript of the important proceedings]; Gee, supra, 99 Cal.App.4th at p. 1416 [rejecting appeal for failure to provide reporter’s transcript of critical motion hearing]; Ballard, supra, 41 Cal.3d at p. 573 [rejecting appeal based upon inadequate record].)
Notwithstanding a fatally deficient appellate record, in an abundance of caution we will also address the underlying issues. Appellant claims that (1) he did not fail to appear because someone appeared for him; (2) there was no valid court order requiring him to appear on the dates indicated; and (3) the trial court was prejudiced against him and should not hear any of his cases, or, for that matter, any criminal cases. None of these contentions has merit.
The Speedy Trial Act requires the disposition of out-of-custody misdemeanor cases within 45 days from the date of arraignment, absent a time waiver by the parties. (Pen. Code, § 1382, subd. (a)(3).) The San Luis Obispo local standards call for resolution of these cases within 90 days from the date of arraignment. (Super. Ct. San Luis Obispo County, Local Rules, rule 10.13 (hereinafter Local Rules).)
Trial judges on criminal assignments have the obligation to provide for the orderly conduct of proceedings, to control the conduct of their ministerial officers, and to achieve a just and effective resolution of each case through active management and supervision. (See, e.g., Cal. Rules of Court, rules 4.112, 4.115; Local Rules, rule 10.08.) The prompt resolution of criminal cases and expeditious movement of the criminal docket is one vital responsibility of a trial judge.
*Supp. 9 To further this goal, and to assist the trial court in preventing logjams, Local Rules, rule 10.08(1) states that attorneys must not accept such a high volume of employment that they are chronically unavailable or unable to attend court hearings:
“ [‘]A member of the State Bar must not [¶] . . . [¶] [ajccept employment or continue representation in a legal matter when the member does not have sufficient time ... to perform the matter with competence . . . .’
“Counsel should not set a case if they are committed to another trial during that period or if they are going to be on vacation. . . . Counsel should not schedule other cases to begin if they have another matter set in this Court. Neither reason constitutes ‘good cause’ for a continuance.”
It is apparent from the trial court’s written order, as well as from the partial transcript of the OSC hearing, that the trial judge was frustrated by Appellant’s failure to appear personally at several readiness conferences, after having been granted multiple continuances over a period of one year:
“It’s my duty as a judge to control the court calendar and see that cases progress in an orderly and expedient way. . . . [This case has] been put over just too many times.
“On the first readiness conference that we had in April, Ms. Feldman appeared. I attempted to conduct the readiness conference with her. She actually announced ready, but when I got into talking to her about the case, the prosecutor said you had another matter trailing in San Luis that she thought would have to be tried first.
“I went ahead and tried to conduct the readiness, kind of figuring that our case would be trailing that one. But then it came out that Ms. Feldman simply did [not] know whether you were going to have any pretrial motions. At that point I ordered that we have another readiness conference on the 14th of April with the understanding you would make an effort to be here, and I fully was aware that you were going to be out of town.
“She made no objection to that setting, and then when you were not here on the 14th, I gave you another opportunity be present on the 15th.
“I’m awfully sorry to have to do this to you, but, you know, on the other hand, I would think you’d be more careful about your trial settings and trials, you know. You need to be present when we tell you to and not somebody that doesn’t know anything about the case. That’s my frustration.”
*Supp. 10 The trial court cannot be faulted for attempting to manage and control its criminal docket effectively and efficiently. (Cal. Rules of Court, rules 4.112, 4.115; Local Rules, rule 10.08.)
With respect to due process, Appellant was provided an electronic copy of the proceedings leading to the OSC more than two months prior to the hearing. The trial court’s written order recites the circumstances surrounding multiple failures to appear, as well as the notice that was provided before the OSC hearing took place. It more than satisfies the requirements of law. (People v. Hundal, supra 168 Cal.App.4th at p. 970; People v. Tabb, supra, 228 Cal.App.3d at p. 1312.)
With respect to the issue of an “excused absence,” it is readily apparent that Appellant, not someone in his stead, was supposed to appear at the three April 2011 readiness conferences. The conference on April 7, 2011, had been scheduled with Appellant’s specific and personal consent, months in advance. (People v. Tabb, supra, 228 Cal.App.3d at p. 1311 [discussing duty to appear at scheduled court hearings without need for separate court order].) At the OSC hearing, Appellant conceded that the attendance of trial counsel at a readiness conference is very important, recognizing that “when you have a trial readiness, you want to work out all of the issues and see if there is any possibility of a last-minute settlement.”
On April 7, 2011, when Appellant did not personally appear, the trial judge issued an order, in open court and entered into the official minutes, requiring his personal appearance at the Grover Beach courthouse one week later, and on successive days after that. Given the deficient appellate record, and the absence of any specific evidence to the contrary, we infer that these later dates were relayed to Appellant by counsel who actually appeared. (West Coast Development v. Reed, supra, 2 Cal.App.4th at p. 698; Snell v. Superior Court, supra, 158 Cal.App.3d at p. 49; Laursen v. Tidewater Assoc. Oil Co. (1954) 123 Cal.App.2d 813, 817 [268 P.2d 104],)[2]
With respect to the size of the penalty, a $750 sanction for failing to appear at one or multiple readiness conferences is clearly within the reasonable range. (See People v. Tabb, supra, 228 Cal.App.3d at pp. 1304, 1311-1312 [imposing $75 fine for attorney’s failure to appear at a court hearing]; Moyal v. Lanphear (1989) 208 Cal.App.3d 491, 496 [256 Cal.Rptr. 296] [imposing $450 fine for party’s failure to appear]; cf. Kim v. Westmoore Partners, Inc. *Supp. 11 (2011) 201 Cal.App.4th 267, 292-293 [133 Cal.Rptr.3d 774] [discussing appellate sanctions ranging between $6,000 and $10,000].)
With respect to alleged bias, Appellant has presented no evidence apart from the sanctions order itself. This is hardly sufficient. Moreover, the partial OSC transcript shows that the trial judge was always respectful and polite, even in the face of patently insulting comments such as this one: “Your honor, it appears to me that you really think that you’re doing the right thing, and I feel sorry for you for your shortsightedness.” (See Scott C. Moody, Inc. v. Staar Surgical Co., supra, 195 Cal.App.4th at p. 1049 [rejecting, for lack of evidence and failure to make appropriate motion, claim of bias against judge who sanctioned attorney].)[3]
V. Counsel’s Conduct on This Appeal
Having decided the merits of this appeal, we tom now to Appellant’s oral advocacy. Simply stated, the record causes us grave concern.
“Our legal system, indeed the social compact of a civilized society, is predicated upon respect for, and adherence to, the rule of law. And ‘ethical considerations can no more be excluded from the administration of justice, which is the end and purpose of all civil laws, than one can exclude the vital air from his room and live.’ . . .
“In other words, it is vital to the integrity of our adversary legal process that attorneys strive to maintain the highest standards of ethics, civility, and professionalism in the practice of law. In order to instill public confidence in the legal profession and our judicial system, an attorney must be an example of lawfulness, not lawlessness.
“Accordingly, an attorney, however zealous in his client’s behalf, has, as an officer of the court, a paramount obligation to the due and orderly administration of justice An attorney must. . . maintain a respectful attitude toward the court.” (People v. Chong (1999) 76 Cal.App.4th 232, 243 [90 Cal.Rptr.2d 198], citations omitted).[4]
It is not an overstatement to categorize Appellant’s oral argument as a parade of insults and affronts. It commenced with his demand that the deputy *Supp. 12 district attorney be removed from counsel table, and it culminated with his rude insistence that the court “state for the record that this is not a contempt proceeding.”[5] In between, the trial and appellate judges were repeatedly disparaged.
The appellate division was referred to as “the fox [watching] the hen house.” Appellant demanded that each appellate judge disclose for the record whether he had discussed the case with the trial court, saying: “But it’s common knowledge in the legal community, and you would be insulting me if you suggested otherwise, for us to believe that you judges don’t talk like women in a sewing circle about us lawyers. You do. I know you do.”
In response to questions about the adequacy of the appellate record, and whether the recorded proceedings (which, as stated, had been provided to Appellant by the trial court) had been transcribed, Appellant stated: “I don’t need to give you the universe of evidence in these proceedings. . . . You don’t need a transcript.” In response to a question regarding a case citation from one of the appellate judges, Appellant retorted: “It must have been a while since you read the brief.”
In recounting the interactions between the criminal bar and bench, Appellant condescendingly opined: “I see a lot of judges that are really quick to bark at defense attorneys. We’re always the fly in the ointment. I don’t see judges willing to bark at prosecutors quite so readily. Maybe that’s because if you upset them one too many times, they’ll get one of their [minions to run against you and unseat you. As, I should add,] Michael Kennedy is now running for judge. I’m sure you’ve heard.”
In discussing the actions taken in the court below, the trial judge was repeatedly referred to by his first name rather than his title. When admonished not to do so, Appellant responded as follows: “OK. Well, hereinafter, I will honor your request. But before I proceed to honor your request, I’ll tell you that in the 33 years that I’ve practiced law, I’ve appeared in front of many great men and women judges, including you three. And I’ve appeared in front of a few who are an embarrassment to our profession and [(first and last name of the trial judge)] is one of those people.” Throughout, the trial judge was castigated, disparaged and even the subject of a veiled threat: “When I came in and ultimately had a hearing, I had listened to the whole proceeding and I heard everything that [the trial court] had to say, and I *Supp. 13 addressed that in my arguments prior to his reaching his pre-printed ruling. And he said he didn’t care. He was the epitome of the completely sealed and closed shut mind. You know ... a human mind is a lot like a parachute. If it doesn’t open, it will get you killed someday.”
These are but some of the inappropriate comments made during the course of the appellate hearing. Moreover, what is missing from the discussion is the tone of Appellant’s entire argument, something not captured in a written transcript, which can best be described as confrontational, accusatory and disdainful.[6]
In his closing summation, Appellant bemoaned that, unlike professional boxing matches, in criminal cases few members of the district attorney’s office any longer shake his hand after completing a trial:
“I’m sad to tell you that when I come into court and I have a hard-fought battle in trial after three, four, five days, that these people that call themselves prosecutors, they call themselves professionals, the number of them that then reach across the table and shake my hand when I extend it, and I do extend it, is fewer than one in ten.
“Now, I realize that I am a passionate and aggressive advocate. And I realize that a trial where a prosecutor is opposing me is not necessarily a pleasant experience. It’s a battle. It’s no more a battle than those two men punching at each other, trying to knock each other literally unconscious. Yet they can embrace each other, professionals, and say, nice work, and they do. And most of these people can’t. That makes me very sad. It makes me ashamed in some ways to be part of this learned profession.”
The chosen analogy leaves much to be desired, and is especially incongruous in light of Appellant’s oral advocacy. The practice of law is not a boxing match; it involves something far more profound and important—the adjudication of civil and criminal disputes between citizens in a democratic republic.
It is a privilege to appear as counsel before the court representing a client in the pursuit of justice. Counsel are considered officers of the court. The handshake at the end of the trial is not the only time when professionalism and civility are expected. It is demanded of lawyers, at all times and at all stages of a case, no matter what the stakes involved. (See, e.g., People v. Chong, supra, 16 Cal.App.4th at pp. 243-244; Civility Guidelines, §§1, 3, 14; In re Marriage of Davenport (2011) 194 Cal.App.4th 1507, 1536-1537 *Supp. 14 [125 Cal.Rptr.3d 292].) Especially in this day and age of distrust and cynicism, counsel’s respect for the institution and administration of justice is critical.
The civility requirements in no way reduce the practice of law to an antiseptic exercise. To the contrary, some of the most passionate and effective advocates for their clients also hold their adversaries, the court, and its judicial officers in the highest regard. Passion can easily coexist with respect, dignity, and civility. (See In re Marriage of Davenport, supra, 194 Cal.App.4th at pp. 1536-1537 [“zealous advocacy does not equate with ‘attack dog’ or ‘scorched earth’; nor does it mean lack of civility”].)
As the Court of Appeal eloquently explained in Kim v. Westmoore Partners, Inc., supra, 201 Cal.App.4th at p. 293:
“Our profession is rife with cynicism, awash in incivility. Lawyers and judges of our generation spend a great deal of time lamenting the loss of a golden age when lawyers treated each other with respect and courtesy. It is time to stop talking about the problem and act on it. For decades, our profession has given lip service to civility. All we have gotten from it is tired lips. We have reluctantly concluded lips cannot do the job; teeth are required. . . .
“We do not come to this conclusion lightly. Judges are lawyers, too. And while we have taken on a different role in the system, we have not lost sight of how difficult it is to practice law. Indeed, at the appellate level, we are reminded daily how complex and recondite the issues that confront practitioners daily can be.
“So we are loath to act in any way that would seem to encourage courts to impose sanctions for mistakes or missteps. But for serious and significant departures from the standard of practice, for departures such as dishonesty and bullying, such steps are necessary. ... It is time to make it clear that there is a price to pay for cynical practices.”
Although we have considered additional monetary sanctions, something more therapeutic needs to be done. There is no place for this sort of argument in any courtroom, state or federal, trial or appellate. It demeans the profession, lowers public respect and, if left unaddressed, conveys the impression that it is acceptable behavior, perhaps even effective advocacy. Most assuredly, it is neither acceptable behavior nor effective advocacy.
In Brown v. Wells Fargo Bank, NA (2012) 204 Cal.App.4th 1353 [139 Cal.Rptr.3d 709], our Court of Appeal considered a frivolous appeal that had *Supp. 15 been prosecuted solely for purposes of delay. The court did “not suffer lightly the abuse of the appellate process,” and it sua sponte referred the matter to the California State Bar for consideration of discipline. (See In re Marriage of Greenberg (2011) 194 Cal.App.4th 1095, 1100 [125 Cal.Rptr.3d 238].)
Such action is appropriate here. Although we have not come to this conclusion lightly, the appellate argument that this Court endured constitutes a “cynical practice^]” that is a “serious and significant [departure] from the standard of practice.” (Kim v. Westmoore Partners, Inc., supra, 201 Cal.App.4th at p. 294.)
VI. Conclusion
The trial court’s order awarding $750 in sanctions against Appellant is affirmed. The clerk of this court is ordered to send a copy of this opinion to the California State Bar for consideration of discipline. We express no opinion on what discipline, if any, is to be imposed.
Trice, J., and Duffy (M.), J., concurred.

 Following the May 3, 2012 appellate hearing, this court requested a transcript of the argument. In addition to the appellate transcript, the clerk inadvertently had transcribed a portion of the OSC hearing on June 21, 2011. No other oral proceedings have been transcribed.

 The minutes of the readiness conference on April 14, 2011, also show that the trial court received an unspecified e-mail from Appellant, circumstantial evidence that he had actual notice of the requirement for his personal appearance. We have been provided with no authority mandating that an order to appear be personally served upon an offending lawyer prior to the issuance of a sanction under Code of Civil Procedure section 177.5.

 We also reject Appellant’s unsupported argument that Code of Civil Procedure section 177.5 does not apply in the context of a criminal case. (People v. Tabb, supra, 228 Cal.App.3d at p. 1310 [“Section 177.5 is fully applicable to both criminal and civil matters.”].)

 The California Attorney Guidelines of Civility and Professionalism (Civility Guidelines), adopted by the State Bar in 2007, echo a similar theme. For example, section 14 of the Civility Guidelines requires an attorney always to “act respectfully and with dignity in court . . . ¶ . . . ¶ [and to] maintain respect for and confidence in a judicial office by displaying courtesy, dignity and respect toward the court and courtroom personnel.”

 After a brief appearance by an assistant district attorney following Appellant’s argument, he stated: “Excuse me. This is not a contempt proceeding and I would ask the court to admonish counsel that she has misused the term of art. And I would ask the court to state for the record that this is not a contempt proceeding.” The court stated: “We’re not going to do that, Mr. Genis.” He retorted: “Well, is it?”

 For purposes of any further appellate review or ancillary proceedings, we are making a copy of the electronic recording of the appellate hearing on May 3, 2012, part of the record.