Filed 10/15/15  P. v. Villamil CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ESTEBAN ANTONIO VILLAMIL,<br><br>    Defendant and Appellant. | G049978<br><br>(Super. Ct. No. 12NF1077)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Michael J. Cassidy, Judge.  Affirmed.

Christine Vento, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Alana Cohen Butler, Deputy Attorneys General, for Plaintiff and Respondent.

Esteban Antonio Villamil was charged with three counts of aggravated sexual assault of a minor (counts 1, 3 & 5), three counts of committing a forcible lewd act on a child under 14 years old (counts 2, 4 & 6), and three counts of committing a lewd act on a child under 14 years old (counts 7, 8 & 9). The information further alleged Villamil used force, violence, distress, menace, and fear of bodily injury, during the commission of counts 2, 4, and 6, and had substantial sexual conduct with a child under the age of 14 during the commission of count 8. A jury was unable to reach a verdict on count 1 and found Villamil not guilty of the remaining aggravated sexual assault charges (counts 3 & 5). The jury determined Villamil was guilty of the lesser included misdemeanor offense of assault and guilty of the remaining charges. It also determined the substantial sexual conduct allegation was true. The trial court sentenced Villamil to 34 years in state prison. On appeal, Villamil contends the trial court erred in instructing the jury with CALCRIM No. 1111. He explains the instruction violated his constitutional rights because the jury was instructed a child's consent is not a defense to the crime of a forcible lewd act (Pen. Code, § 288, subd. (b)(1)), and this instruction could have confused or mislead the jury because consent would have negated the element of force.[1] We conclude the contention lacks merit, and we affirm the judgment.

I

Because the sole issue raised on appeal relates to instructional error, we need only briefly summarize the facts. Suffice it to say, 61-year-old Villamil engaged in numerous sexual acts with his step-granddaughter E.V. The abuse started when E.V. was nine years old and lived in Tijuana with her mother, M.V. (Mother), who is Villamil's daughter. E.V. slept in the same room as Mother and her stepfather. E.V. stated Villamil touched her breasts and groin, and put his penis in her bottom, which hurt, when no one was home or when everyone was asleep.

---

[1] All further statutory references are to the Penal Code.

2

In the fall of 2011, Mother moved into Villamil's home in Fullerton for a few months and then moved back to Tijuana to be with her husband. Mother left E.V. and her brother, I.V., in the care of Villamil and his wife. Villamil is the biological grandfather of E.V.'s four siblings.

The abuse continued and escalated while E.V. lived with Villamil in Fullerton. Villamil offered E.V. money and told her not to tell anyone about what had happened. E.V. described three different disturbing incidents in great detail. She recalled that on two occasions I.V. interrupted Villamil, and I.V. later testified at trial that Villamil would lock himself and E.V. in the bedroom, and once he saw Villamil crouching down and touching E.V.'s bottom.

In April 2012, E.V. told Mother about the sexual abuse, and she called the police. E.V. was interviewed first by Corporal Billy Phu, and then more in depth by the Child Abuse Services Team (CAST). After her CAST interview, E.V. placed a "controlled" covert call to Villamil. E.V. confronted Villamil about the abuse, which he initially denied. Later, he admitted touching her breasts and claimed he touched her because she allowed him to do it. He asked for her forgiveness and promised to never touch her again.

When Villamil was later interviewed by detectives, he admitted touching E.V. but claimed she wanted him to "use her" and she wanted to have sex with him. He denied using any force and touched E.V.'s vagina and backside only at her urging.

At trial, the defense called Villamil's granddaughter, J.F., who lived with him until his arrest. She stated Villamil was never sexually inappropriate and E.V. never seemed scared of her step-grandfather. J.F. stated she initially got along with E.V. but then she became mean and rebellious. J.F. asked E.V. what happened with Villamil, and E.V. told her that Villamil never put his penis inside her.

3

II

Villamil would like this court to reverse his convictions on counts 2, 4, and 6, charged under section 288, subdivision (b)(1) [forcible lewd act on a child under 14 years old]. In essence, he maintains that if a 9 or 10 year old child consents to a lewd act "there would be no reason to use force" and the instruction could have confused or mislead the jury "as to whether any evidence that [E.V.] consented to the lewd acts should be considered." He suggests the instruction impaired his defense that he did not use force. We disagree.[2]

Under section 288, subdivision (b)(1), any person who commits a lewd or lascivious act upon a child under 14 "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person, is guilty of a felony . . . ." The prosecution's theory at trial was that Villamil committed the offenses through force. For example, there was evidence he locked the bedroom door, he put E.V. face down on the bed despite her trying to scream, he trapped her against the kitchen wall, and he made E.V. put her hand on his penis several times against her will.

CALCRIM No. 1111 instructs the jury on the elements of the crime of committing a forcible lewd act with a child, in violation of section 288, subdivision (b)(1). This instruction states the prosecution must prove "the defendant used force . . . [or] duress" in committing a lewd act. It defines "force" and "duress" and further states: "It is not a defense that the child may have consented to the act."

"In reviewing any claim of instructional error, we must consider the jury instructions as a whole, and not judge a single jury instruction in artificial isolation out of the context of the charge and the entire trial record. [Citations.] When a claim is made

---

[2] We note the Attorney General maintains Villamil forfeited this issue because he failed to object to the instruction below. Because Villamil also contends his counsel was ineffective for failing to object to the instruction, we will address the issue on the merits. (See *People v. Chong* (1999) 76 Cal.App.4th 232, 243.)

4

that instructions are deficient, we must determine whether their meaning was objectionable as communicated to the jury. If the meaning of instructions as communicated to the jury was unobjectionable, the instructions cannot be deemed erroneous. [Citations.] The meaning of instructions is [determined under the] test of whether there is a 'reasonable likelihood' that the jury misconstrued or misapplied the law in light of the instructions given, the entire record of trial, and the arguments of counsel. [Citations.]" (*People v. Dieguez* (2001) 89 Cal.App.4th 266, 276-277.)

We conclude CALCRIM No. 1111, in its entirety, properly instructed the jury on the applicable law. (*People v. Soto* (2011) 51 Cal.4th 229, 233 (*Soto*).) The instruction appropriately clarifies that an 11-year-old is legally incapable of consenting to sexual relations. (*Id.* at pp. 233, 237.) As we will now explain, the language in CALCRIM No. 1111 is not constitutionally objectionable and, consequently, the court properly instructed the jury in this case.

Our Supreme Court in *Soto* held: "Unlike the crime of rape, there is no requirement that the lewd acts be committed 'against the will of the victim.' Indeed, 20 years ago the Legislature specifically deleted language to this effect from the definition of the aggravated lewd act crime. (Stats. 1981, ch. 1064, § 1, p. 4093.) [¶] Despite this change, and despite long-standing precedent holding that a child under age 14 is legally incapable of consenting to sexual relations, some Courts of Appeal have reasoned that consent is a defense to an aggravated lewd act charge because consent is logically inconsistent with the perpetrator's use of force or duress. We disagree with this conclusion. We hold that the victim's consent is not a defense to the crime of lewd acts on a child under age 14 under any circumstances. Thus, it is not error to so instruct a jury." (*Soto, supra,* 51 Cal.4th at p. 233, fn. omitted.)

In *Soto,* the court determined the language of section 288 does not require the lewd or lascivious act be committed against the child's will. (*Soto, supra,* 51 Cal.4th at p. 237.) It stated, "Nevertheless, defendant argues this requirement must be read into

5

the aggravated offense. He reasons that a sexual act committed by use of force or duress necessarily implies that the perpetrator applied these pressures in order to overcome the victim's will. Evidence that the child 'freely consented' to a sexual encounter would tend to rebut a finding that the perpetrator actually used force or duress to accomplish the act. Thus, defendant maintains, it is error to instruct a jury that the victim's consent is not a defense to charges under section 288[, subdivision] (b)(1)." (*Id.* at pp. 237-238.)

In considering this contention, our Supreme Court first considered the legislative history and concluded "legislative intent to do away with consent as a defense in lewd act cases is made manifest by this history." (*Soto, supra,* 51 Cal.4th at p. 241.) Despite changes to the statute clarifying this issue, the court in *Soto* observed several appellate courts had erroneously continued to recognize consent as a defense, making a flawed analogy between lewd acts on a child and rape. "We have cautioned that significant differences between these crimes argue strongly against importing definitions from one context to the other. [Citation.] Unlike rape, the wrong punished by the lewd acts statute is not the violation of a child's sexual autonomy, but of its sexual *innocence*. '[S]ection 288 was enacted to provide children with "special protection" from sexual exploitation. [Citation.] The statute recognizes that children are "uniquely susceptible" to such abuse as a result of their dependence upon adults, smaller size, and relative naiveté. [Citation.] The statute also assumes that young victims suffer profound harm whenever they are perceived and used as objects of sexual desire.'" (*Id.* at p. 243.)

In its opinion, the *Soto* court adopted Justice Mihara's concurring opinion in *People v. Bolander* (1994) 23 Cal.App.4th 155. "'Once lack of consent was eliminated as an element of the prosecution's case, it was not reborn as a part of the definition of force. Lack of consent is not an element of the offense prohibited by section 288, subdivision (b), and the victim's consent is not an affirmative defense to such a charge. The victim's consent or lack thereof is simply immaterial.'" (*Soto, supra,* 51 Cal.4th at p. 245.) With respect to force: "'While the fact that the victim actually consents to a lewd

6

act might render the use of force unnecessary, the victim's actual consent does not eliminate the fact that the defendant actually uses violence, compulsion or constraint in the commission of the lewd act, nor does the victim's consent diminish the defendant's culpability or immunize the defendant from suffering the penal consequences that arise from a forcible lewd act.'" (*Ibid.*)

The *Soto* court concluded consent of the victim is not a defense: "'It is true that an assault implies force by the assailant and resistance by the one assaulted; and that one is not, in legal contemplation, injured by a consensual act. But these principles have no application to a case where under the law there *can be* no consent. Here the law implies incapacity to give consent, and this implication is *conclusive*. In such case the female is to be regarded as resisting, no matter what the actual state of her mind may be at the time. The law resists for her.' [Citation.]" (*Soto, supra,* 51 Cal.4th at pp. 247-248, fn. omitted.)

Justice Werdegar, writing for the concurring and dissenting justices, agreed consent is not an affirmative defense to charges under section 288, subdivision (b)(1). (*Soto, supra,* 51 Cal.4th at p. 252 (conc. & dis. opn. of Werdegar, J.).) The three dissenting justices disagreed with the majority over whether it was confusing or misleading to instruct the jury that a child's consent is not a defense. Justice Werdegar wrote, "An instruction that consent is not a defense might lead a reasonable juror to improperly disregard any evidence of freely given consent put forward by the defense, rather than considering that evidence, in deciding whether the prosecution has met its burden to prove the child's compliance was in fact produced by duress, menace or fear of bodily injury." (*Id.* at p. 252 (conc. & dis. opn. of Werdegar, J.).)

Villamil urges this court to adopt the reasoning contained in the dissenting opinion. However, *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455, admonishes us to follow our Supreme Court's majority opinion. It is binding on all the lower courts in the state. "And, it needs no citation of authority to point out that a

7

majority opinion of the Supreme Court states the law and that a dissenting opinion has no function except to express the private view of the dissenter." (*Wall v. Sonora Union High Sch. Dist.* (1966) 240 Cal.App.2d 870, 872.) Our research has turned up no Supreme Court decision overruling or disapproving the majority holding in *Soto*, and therefore, we are compelled to conclude the court did not error in reading CALCRIM No. 1111.

III

The judgment is affirmed.


O'LEARY, P. J.

WE CONCUR:


MOORE, J.


THOMPSON, J.